## THOMAS B. BLAIR ET AL. v. W. L. BAIRD ET. AL.

### Decided May 7, 1906.

**1.—Contract—Rescission—Misrepresentation.**

Where a contract for sale of ranch property provided for protection of the purchasers against any existing liens on same by depositing the obligations given by them in escrow, to be delivered to the vendor only on his producing releases of such liens, this was the sole remedy of the purchasers, and they could not rescind the contract because of misrepresentations by the seller as to the existence of liens.

**2.—Evidence—Res Inter Alios.**

A letter by plaintiff in the suit to his own agent was not admissible against defendant in the absence of evidence to connect defendant with or bind him by such letter.

**3.—Delivery of Cattle—Tally—Joint Agent.**

Where, in a sale of ranch property, cattle thereon were to be paid for in accordance with their tallying by one selected as joint agent of the buyer and seller, such tally was the only delivery contemplated, and mistake or fraud in the tally by such joint agent did not afford ground for rescinding the contract unless participated in by the opposite party.

**4.—Sale of Cattle—Estimated Number—Fraud.**

Where it was sought to rescind a sale of ranch property because of misrepresentation of the number of cattle thereon, the contract containing an estimate but providing for ascertaining the exact number by tally, if fraudulent misrepresentation of the number by the seller was to be submitted as a ground for rescission defendant was entitled to a charge to find in his favor if the representations, though not correct, were fairly and honestly made.

**5.—Contract—Tally of Cattle Sold—Change in Method.**

A change in the method of distinguishing cattle tallied in a sale of ranch property from that agreed on by the purchaser, in order to be a ground for rescinding the contract, must be shown to have caused substantial injury to the purchaser.

**6.—Bank—Deposit—Conversion.**

A bank to which the purchaser in a sale paid money thereon to the credit of the seller, did not, by appropriating it, with the latter's consent, to his debt to itself, become liable to the purchaser depositing it, in his suit to rescind the contract and recover back the money paid.

**7.—Contract—Delivery—Date.**

On a contract to take, at a fixed price, all of a certain stock of cattle that should be gathered by a named date, the purchaser was not required to take any subsequently gathered.

**8.—Written Instrument.**

It is the duty of the court to construe a written instrument and advise the jury as to its effect.

**9.—Fraud—Mutual Guilt.**

A party who has overreached another by fraudulent representations can not avoid rescission of the contract by showing that his adversary attempted to do even so to him.

Appeal from the District Court of Milam County. Tried below before Hon. J. C. Scott.

*Henderson & Fowler, Camp & Caldwell,* and *Freeman & Morrison,* for appellants.—Appellees did not come into court with clean hands and were guilty of fraudulent misrepresentations as to the value of the land sold to appellees and its earnings, and were thereby estopped from claiming a rescission of the contract which they had procured by fraud. 24 Am. & Eng. Ency. of Law, 624 and cases cited, notes 6 and 1.

It was the duty of the court to construe the written contract and to charge as to its legal effect, and it was error to leave the construction thereof to the jury. San Antonio v. Lewis, 9 Texas, 71; Shepherd v. White, 11 Texas, 346; Cook v. Dennis, 61 Texas, 246.

' Unless appellees were injured by the representations complained of, they could not rescind, and it was fundamental error for the court not to have so instructed the jury. Read v. Chambers, 45 S. W. Rep., 742; Moore v. Cross, 87 Texas, 561; Calhoun v. Quinn, 21 S. W. Rep., 705; Hopkins v. Woldert Groc. Co., 66 S. W. Rep., 63; Stewart v. Wyoming Ranch Co., 128 U. S., 383.

. The testimony of Jones and Baird objected to was inadmissible, because same was the self-serving declarations of the plaintiff to a third person not a party to the contract, in the absence of the defendants, and permitted said witnesses to corroborate each other by such declarations. Kershner v. Latimer, 64 S. W. Rep., 237; Griffith v. Lake, 12 S. W. Rep., 285; Ellis v. Randle, 24 Texas Civ. App., 480.

Said testimony was immaterial and irrelevant to any issue, because appellees did not rely upon representations as to there being no liens, but provided for releases of all liens in the contract. Webb v. Harris, White & Wilson C. C., sec. 1289; Southern Development Co. v. Silva, 125 U. S., 247; Beach on Contracts, sec. 804; 14 Am. & Eng. Ency. of Law, 106, sec. 8.

The letter of Baird to Jones was inadmissible unless communicated to appellants, and was admitted on the promise of appellees to show it had been communicated to appellants, which appellees failed to do. Ellis v. Randle, 24 Texas Civ. App., 480; Smith v. Caswell, 4 S. W. Rep., 848; Texas & P. Ry. Co. v. Boggs, 30 S. W. Rep., 1089.

,The charge is erroneous, because same submits the issue of conspiracy between Blair and O'Neal, when there was no evidence showing or tending to show such conspiracy. St. Louis S. W. Ry. Co. v. Arnold, 87 S. W. Rep., 173; Ladd v. Ney, 81 S. W. Rep., 1007.

Said charge is erroneous, because same does not require appellees to have been injured by the absence of Jones from the places of tallies, and permits a rescission regardless of injury. Read v. Chambers, 45 S. W. Rep., 742; Hopkins v. Woldert Groc. Co., 66 S. W. Rep., 63.

The charge is erroneous, because it makes appellant Blair responsible for the fraud of O'Neal, the joint agent, and for fraud subsequent to the date of the contract. Navarro Pub. Co. v. Fishburn, 2 Posey's U. C., 593; 2 Wilson, C. C., sec 394; Chesterman v. Gardner, 5 Johns Ch., 29; 25 Pacific Rep., 427.

The contract, made a part of the petition, only required appellant Blair to take the steers that could be gathered by December 1, 1903, and a refusal to take steers after said time would not be ground for rescission. Bowen v. Hatch, 34 S. W. Rep., 330; Gulf, C. & S. F. Ry. Co. v. Fenn, 76 S. W. Rep., 597; Hopkins v. Woldert, 66 S. W. Rep., 63.

It appeared from the contract that the number of steers was only an estimate, and the contract could not be rescinded on that ground. Downs v. Self, 67 S. W. Rep., 897; Beach on Contracts, sec. 804.

That in estimates and opinions, an honest belief controls: Bruner v. Strong, 61 Texas, 555; Downs v. Self, 67 S. W. Rep., 897; Beach on Contracts, secs. 800, 804; Pomeroy Equity Jurisprudence, sec. 878; Southern Development Co. v. Silva, 125 U. S., 247; Mudsill Mining Co. v. Watrous, 61 Fed. Rep., 163.

The contract required the liens to be released, and a failure to do so would not be ground for rescission but for damages. Moore v. Cross, 87 Texas, 561; Meyer v. Swift, 11 S. W. Rep., 378; Chicago, T. & M. Ry. Co. v. Titterington, 84 Texas, 223; McIntyre v. DeLong, 71 Texas, 89. That subsequent fraud is no ground to rescind. Navarro Pub. Co. v. Fishburn, 2 Posey's U. C., 593; 2 Willson Civil Cases, sec. 394.

*Monta J. Moore* and *Hefley, McBride & Watson*, for appellees.—If appellees were shown to have made fraudulent representations, this fact could not avail appellants in an action by appellees to rescind the contract. Chaney v. Coleman, 77 Texas, 100.

A contract may be rescinded for fraudulent representations inducing its execution, though such representations were not embodied in the contract or even varied the express terms thereof. Mitchell v. Zimmerman, 4 Texas, 79; Nallwood, etc., Co. v. Berry, 10 Texas Ct. Rep., 355.

There being an issue as to whether Baird intended to waive the right to have the cattle branded, and accept the "tail-bobbing" instead, his letter of instructions upon the subject to his agent, Jones, was admissible, whether the contents of same were communicated to Blair or not—it is wholly unnecessary that it should have been. First Nat. Bk. of Tallahassee v. McCord, 39 S. W. Rep., 1003.

Appellees had the right to contract for such a method of tallying (branding) as they preferred or deemed to their interest, and a fraudulent intention of Blair at the execution of the contract, to deprive them of this right, followed by his subsequent execution of such intention, is ground for rescission of the contract at the instance of appellees, without any showing of injury to them other than such deprivation of a contractual right. American Cotton Co. v. Collier, 69 S. W. Rep., 1024; Moore v. Byars, 47 S. W. Rep., 752; Touchstone v. Staggs, 39 S. W. Rep., 189.

Appellant's fraudulent representation that he owned about 465 steers, when he owned only 233, is ample ground for rescinding the contract, it appearing that such representation was a material inducement to its execution. Dargan v. Ellis, 81 Texas, 194; Baltimore, P. B. & L. Soc. v. Smith, 54 Md., 187, 39 Am. Rep., 374.

One's false material representations are ground for rescission of a contract, though innocently made, and even believed by the party making them to be true. Beaty v. Bulger, 66 S. W. Rep., 893.

Proof of the representation that there were 3,300 head of cattle was admissible under the allegations of fraud contained in appellees' petition, and to make certain that was meant by the language "about 3,300 head" in the contract. Franco-Texan Ld. Co. v. Simpson, 1 Texas Civ. App., 600.

KEY, ASSOCIATE JUSTICE.—Appellees concede that appellants' brief contains a correct statement of the nature and result of this suit, which statement is as follows:

"This was an action by appellees, W. L. Baird and Laura Jones, joined by J. M. and J. D. Jones, to rescind a written contract, dated September 12, 1903, made between W. L. Baird and Laura Jones, parties of the second part, and Thomas B. Blair, party of the first part therein. The First National Bank of Midland, Texas, and J. T. Pemberton were joined with Thomas B. Blair as defendants. The contract sought to be rescinded was one whereby said Blair, in consideration of $40,000 sold a ranch and cattle in Eddy County, New Mexico, to W. L. Baird and Laura Jones, and took in part payment a farm of 792 acres in Milam County, Texas, at $15,000, and the assumption of a mortgage lien thereon of $3,900, and the remainder of the consideration was to be paid by a $10,000 cash payment on December 1, 1903, less the value of certain steers, and five notes for $3,000 each, due in one to five years. By the terms of the contract, appellees Baird and Jones were given the possession of the ranch at once, and appellant Blair of the farm and certain personal property thereon, and Blair was to have two years to tally out and deliver the cattle. The deed to the land and the notes, along with the contract were placed in the First National Bank of Midland, of which J. T. Pemberton was cashier, to be delivered to Blair as prescribed in said contract, and one W. W. O'Neal was made the joint agent to tally and deliver the cattle and make certificates thereof and deliver same to the bank upon which it should act, as will appear fully in said contract. J. M. and J. D. Jones were made parties plaintiff on the allegation that they owned an interest in the land and had signed the deed which it was sought to cancel, and the Bank and Pemberton were joined on allegations of their holding the deed and notes, and also on a charge of conspiracy with Blair to cheat and defraud appellees, and also that they had converted $3,000 paid by Blair & Jones on said cash payment.

"Appellees based their action to rescind upon the ground of misrepresentation of the number of stock cattle; of the number of 1903 calves; of the number of steers; upon misrepresentation as to there being no liens against the cattle; upon a concealment from them of O'Neal's relationship to Blair; upon change in the method of tally from branding to bobbing of the tails of the cattle, and a charge of conspiracy between Blair, the Bank and Pemberton and also between Blair and O'Neal to perpetrate the fraud alleged, all of which was set out at length. They also alleged that the false and fraudulent representations were made in Milam County and that Blair so made the same there in pursuance of the common purpose and conspiracy between him and the Bank and Pemberton, and also that, in violation of the terms of the contract and its duty under the escrow, the bank had applied the $3,000 to a debt due it by Blair without requiring a delivery of releases to the mortgages, and also that O'Neal, the joint agent, had not made honest and correct tallies and certificates thereof, and had not tallied out and delivered the number of head of cattle he made certificates to, and that Blair was insolvent and unable to procure releases to the liens against the cattle and could not make title thereto and that they were prevented from selling the cattle

thereby, and they asked for rescission of the contract and for a cancellation of the notes and deed, and for a judgment for $3,000 paid on the contract against all the defendants, and for judgment for the personal property delivered to Blair or its value, and for the expenses incurred by them in running the ranch, and tendering back said ranch and cattle so far as they could.

"Appellant Blair answered by general and special exceptions, all of which were overruled, and by general denial and special denial of each of the allegations of appellees, and affirmatively that appellees were not entitled to a rescission because they had refused to accept or rely upon any representations, if made, which were denied, as to the number of head of stock cattle, but had required same to be counted and he to pay for any deficiency at a stipulated price named in the contract, and had not and could not suffer any injury thereby; that as to the calves, that same were not to be counted or paid for and he had refused to guarantee any number, but had only estimated the same and had given to appellees the basis on which the estimate was made, and that there was no deficiency; that the number of steers were not guaranteed, and were only estimated, and that the basis for such estimate was given to appellees; that he did not agree to take all of said steers upon the cash payment, but only what could be gathered by December 1, 1903, and that he did take and allow appellees credit for 233 head, which were all that was gathered by said time, and that there was no deficiency in said steers; that he had informed appellees of the liens against the cattle and appellees had protected themselves against the same by requiring releases, and that the bank should hold the deed and notes until the liens were released, and releases of all liens had been procured and tendered to appellees prior to the filing of the suit, on their paying the $10,000 cash less the value of the 233 steers, and that appellees refused to do so, and he tendered said releases into court, and also that the reason he did not procure said leases (releases) sooner, was because appellee failed and refused to make the cash payment, except the sum of $3,000; that according to the laws of New Mexico, none of the liens against the cattle were valid as against appellees, because said liens had lapsed for failure to be renewed, and that appellees had not been prevented from selling the cattle, but had sold 115 head thereof; that the method of tallying of the cattle was changed by mutual consent, and if not by mutual consent, was changed on account of the poor condition of the range, cattle and horses, and the want of facilities with which to brand the stock without serious injury, and that the method adopted was common, customary and reasonable and would mark and identify the cattle for the period of time permitted for delivery, and that no harm or injury had or could come to appellee thereby; that he had not concealed from appellees the relationship of O'Neal to him, or made any representation as to said O'Neal, but he was selected as the joint agent at the suggestion of other parties, and because of his fitness and integrity, and that he had faithfully and honestly tallied the cattle and had delivered 2,174 head of the 2,200 head called for by the contract; that the contract did not require either him or O'Neal to notify appellees or their agent J. D. Jones of the times or places where the cattle were to be tallied, but that O'Neal had done so, and if said Jones was not present at

all of the places, that it was his and appellees' own fault; that he was not present at any time while said cattle were being tallied and had no understanding or agreement with said O'Neal as to the time or place where said tallying was to be done, and that if any fraud was perpetrated by O'Neal in said tally, certificates of tally, or as to preventing appellees' agent Jones from being present, that same was the fraud of a joint agent and done without his knowledge or consent; that neither O'Neal or the Bank or Pemberton knew of the contract until long after it was made and that there was no understanding, agreement or conspiracy between him and them, or any of them to defraud appellees; that the cash payment was not to be paid to the bank or to be held by the bank for releases or liens, but was to be paid direct to him, and was in fact paid to him by appellees; that appellees, with a full knowledge of the change from branding to bobbing the tails as a tally mark, had ratified and confirmed and accepted the same without objections, and had also, with a full knowledge of the same, and of the absence of Jones from the places where some of the cattle were tallied and of the difference between the number of cattle shown by O'Neal and the number by Jones, and of the number of head of steers gathered and delivered to him and of the liens against them, had received said cattle, sold some of them and paid $3,000 on the cash payment, and were thereby estopped when it was too late now to regather all of the cattle on account of a heavy death loss by reason of a serious drouth in New Mexico; that apppellees had not complied with their contract at all, and had failed to make the cash payment or to pay the interest on the loan as agreed, or the taxes on the land, and were trying to rue the trade on account of a depreciation in the price of cattle and a heavy death loss during the winter of 1903-1904, and that he had in all things complied with the contract and was not insolvent, nor never had been unable to carry out said contract.

"Appellant bank answered with a plea of privilege to be sued in Midland County, Texas, and subject to said plea, with general and special exceptions, general denial and special denial of each and all of the allegations of fraud and conspiracy against it, and also especially plead that the contract did not require the money to be paid to it or to be held by it for releases, and that the $3,000 was not paid by appellees to it but to Blair, and in the alternative that it was simply a gratuitous bailee of such money, deed and notes, and that under the interpretation of the contract by it, it was not to have or hold the money for releases, but only the deed and notes which it had held, and that it had been directed to place said money to Blair's credit by appellees, and had not been notified to hold the same, and had acted in good faith and without fraud or negligence on its part, and that it was not liable.

"Pemberton answered with a plea of privilege to be sued in Midland County, Texas, and subject thereto, by exceptions and general denial.

"Appellees replied by exceptions and general denial, and that the $3,000 was paid upon a past due debt of Blair to the bank, and also by trial amendment that the method by which the cattle were to be tallied was by branding, and that same was omitted from the contract by mutual mistake.

"Trial was had resulting in a judgment for appellees decreeing a rescission of the contract and for judgment against Blair and the bank

jointly for the $3,000, and against Blair for the personal property and for rents, and in favor of J. T. Pemberton."

Instead of submitting the case to the jury on special issues, as might well have been done, the court's charge, though submitting six different grounds for rescission, was so framed as to require a general verdict.

The contract referred to reads as follows:

"The State of Texas, }
    County of Milam   }

This instrument made and entered into this the 12th day of September, 1903, by and between T. B. Blair of Ector County, Texas, acting for himself individually and as the duly qualified survivor of the community estate of himself and deceased wife Addie E. Blair, said qualification having been obtained in the Probate Court of Ector County, Texas; said Blair known in this instrument as party of the first part, and W. L. Baird and Laura Jones, a feme sole, the said last two named parties being residents of Milam County, Texas, and in this instrument known as parties of the second part, witnesseth:

"1st. That said Blair, for and in consideration of the sum of forty thousand dollars paid and secured to be paid in the manner and subject to the stipulations hereinafter mentioned, as follows: $10,000 in cash, less the amount to represent steers, as hereinafter provided; $15,000 in land, the deed to which is attached to this contract; and the remaining $15,000 in five promissory notes, executed by the said W. L. Baird and Laura Jones, in the sum of $3,000 each, payable to the order of T. B. Blair at Midland, Texas, due respectively on or before November 1, 1904, 1905, 1906, 1907 and 1908, and each bearing interest from the date of this contract at the rate of ten percent per annum, interest payable annually on November 1 of each year; and said notes to provide that the failure to pay either of them, or any installment of interest thereon when due, shall, at the option of the holder thereof, mature all of said notes. And a lien is hereby retained on all of the hereinafter described property, cattle and increase, to secure the payment of said notes and indebtedness; provided, however, that when said notes, according to their reading and tenor, shall be fully paid off and discharged, then said lien is to become void; otherwise to remain in full force and effect, and subject, however, to the right of the parties of the second part to sell or dispose of the cattle as provided hereafter.

"2d. In consideration of these premises the said T. B. Blair has granted, sold and conveyed, and by these presents does grant, sell and convey unto the said Laura Jones and W. L. Baird, the following described property, to wit: His ranch, cattle and outfit in Eddy County, New Mexico, and the adjoining counties, consisting of his house, two watering places, wind-mills, corrals, fencing, and the use of his school section lease right; all in Eddy County, New Mexico, together with all wagons and tools now on said ranch and belonging thereto; and also about 2,300 head of stock cattle branded (we omit brands) together with the 1903 calf crop, estimated at about 1,000 head, also 25 head of saddle horses, and 11 head of stock horses counting colts. And the said Blair does bind himself, his heirs, executors and administrators to warrant and forever defend all and singular the title to said property to said

Jones and Baird, their heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"3d. It is understood and agreed, however, that said consideration of $40,000 shall not be paid at once to said Blair, but that said Blair is given the right to gather all the one, two and three-year-old steers in said brands above described, estimated to be about 350 head of ones, and 115 head of twos and threes, and as many as can be gathered by said Blair or by second parties, and delivered to the said Blair on or before December 1, 1903, are to be rounded up and counted as provided herein, and are to be taken away from said ranch by said Blair; and the said Blair agrees to take said one-year-old steers at $15 and said twos and threes at $20 per head, and the number of said one, two and three-year-old steers are to be ascertained in the manner and form as above provided, and upon their number being so ascertained, and upon said Blair delivering cattle to represent such payment as hereinafter provided, at $15 per head, the said party of the second part are then to pay in cash to said Blair the difference between the value of said animals as herein agreed upon and the sum of $10,000; that is, whatever sum over and above the amount the steers shall come to, and less than $10,000 the said second parties shall pay in cash to the said Blair at Midland, Texas, on December 1, 1903.

"4th. The said second parties are to execute a general warranty deed to the 792 acres of land to the said Blair, and are to execute the said five notes above described, and this bill of sale and instrument and said deed and said notes shall at once be deposited in escrow with the First National Bank at Midland, Texas, and shall only be surrendered and delivered to said Blair by said bank on the following conditions and contingencies, to wit: When said Blair shall have tallied out and delivered to said Jones and Baird 700 head of stock cattle, as above described, not including 1903 calves, then said bank shall deliver to him the deed to said 792 acres of land in Milam County, Texas, which deed is to be signed by J. D. Jones, Laura Jones, J. M. Jones and J. L. Jones. But before the delivery of this 700 head of stock cattle, the said Blair is to tally out, count and deliver to said second parties, a sufficient number of cattle at the rate of $15 per head to equal the amount of cash which shall be paid to the said Blair under the terms of this contract.

"5th. And whenever the said Blair shall have tallied out and delivered unto said second parties at any time within two years from the date hereof, an additional 180 head of stock cattle in his brand, not including 1903 calves, or any subsequent increase, then said bank shall deliver to him the first due of said series of five notes above described, and subsequent notes shall in like manner be delivered to him, one note each, first taking the one first to become due, for each subsequent 180 additional head of cattle so tallied out and delivered.

"6th. Said Blair shall have two years from the date of this contract in which to fully complete the tally and delivery of said cattle, and it is understood that if at any time prior to the·expiration of said two years, said Blair shall have tallied out and delivered unto said second parties 2,200 head of stock cattle in his brand, calves of 1903 and subsequent increase not counted, this sale shall have been fully completed, and said bank shall thereupon deliver to said Blair all of said notes.

"7th. It is, of course, to be understood that said Blair shall first satisfy all liens which now exist against said cattle and deliver releases of such to said bank before either of said notes shall be delivered to him.

"8th. And the said second parties shall not be required to take more than 2,400 head of cattle under this contract.

"9th. It is also understood and agreed that if said Blair shall fail within said period of two years from this date to so turn over the full number of 2,200 head of stock cattle, not including the 1903 or subsequent year calves, then the remaining note or notes, in the hands of the bank shall be credited with the value of such number of cattle as he shall be short, at the rate of $15 per head. If, however, he shall count out and deliver more than 2,300 head of such cattle within said period of two years, said Jones and Baird obligate themselves to pay said Blair in cash at Midland, Texas, $15 per head for each and every head of such excess over 2,300.

"10th. It is understood and agreed that said Jones and Baird shall have the immediate possession and charge of said ranch, and shall retain in the management of said ranch, including employment of hands, for the two year period aforesaid, W. W. O'Neal, or in case of his inability to act or accept said position, J. D. O'Neal, and the said W. W. or J. D. O'Neal, as the case might be, shall be the agent of all parties to this contract in counting and delivering of said cattle, and that such tallies may be made at the various round-up places and at the most convenient places.

"11th. That said W. W. or J. D. O'Neal, as the case may be, if unable to be personally present at any round-up may designate some suitable person at such round-up to take said count and tally for him and in his stead, said tallies when made by said W. W. or J. D. O'Neal, as the case may be, or by any of their said deputies, shall be certified to before a notary public or some officer authorized to administer oaths; said certificates to be made and sent to said bank, and such certificates shall be received by the bank and the delivery of money, notes and deeds shall be made by said bank on the strength of same, and releases as aforesaid, of liens now existing against said cattle, such deliveries to be made on the basis of this contract.

"12th. Each party hereto shall have the right to have their representatives on the ground, if they so elect, to see that tallies are fairly made, but such representatives of either party shall have no right to dictate as to the time, place or manner of such counts.

"13th. In the event of the death or inability of the agent selected to act herein, it is agreed that a similar agent shall be selected by the parties hereto, whose acts and power and authority under this contract shall be the same as the O'Neals selected.

"14th. It is understood and agreed that second parties may take possession of said ranch at once, subject to the terms of this contract, and said parties are to bear all future expenses of management and control of said ranch, including the expense incident to tallying out of said cattle, except that if Blair desires other representation than as herein provided, he shall defray the expense of such other representation himself.

"15th. Said Blair shall have immediate possession of said land and shall likewise bear all that expense.

"16th. It is understood that said second parties are to have under this contract all of the calves of the crop of 1903 estimated at about 1,000 head, and also all future increase of said cattle sold herein.

"17th. It is understood that said second parties are to have the right to sell and dispose of such portion of the cattle herein conveyed, along from time to time as they see fit, but none of said cattle are to be sold by the said second parties, except such as are tallied out and counted by them and when sale of such cattle are made by said second parties, all the excess of the proceeds of such sales over $2,500 per annum shall be applied upon their indebtedness to said Blair, and if such excess of proceeds of such sales shall amount to more than the sum or sums then due on said notes of second parties, then Blair is to rebate interest accordingly.

"18th. It is further understood that Blair is to have the five mules and three mares of the second parties now on said 792 acres of land, and all tools and implements of second parties now used in, on and in connection with said land, and also all crops, growing or to be grown on said land during the year 1903.

"19th. It is also understood and agreed that said Blair assumes and obligates himself to pay off and discharge a note due upon said land for the sum of $3,900 and payable in five years from date, and bearing interest at the rate of 6 percent per annum, but is not to assume, pay off or discharge any other lien, mortgage or encumbrance on said land, but, except as to said $3,900 note, the said second parties covenant and agree that there are no other mortgages, liens, charges or encumbrances upon said land, and all interest to date due on said note is to be paid by the second parties.

"20th. It is expressly understood and agreed that the parties of the second part will keep up the brand of open A on both sides upon all of the increase of said cattle and that no other brand shall be kept up by second parties than said open A until the indebtedness to Blair is fully paid off and satisfied.

"Witness our hands at Cameron, Texas, this September 12, 1903.

T. B. Blair,
Party of First Part.
Laura Jones,
W. L. Baird,
Parties of Second Part."

*Opinion.*—Over appellants' objection the trial court permitted J. D. Jones to testify as to an arrangement between him and W. L. Baird and Laura Jones as to what they would pay him for his portion of the land, and as to the statements and declarations made by W. L. Baird to him, to the effect that appellant Blair had represented that there were no liens against the cattle. The seventh subdivision of the contract relates exclusively to the subject of liens upon the cattle, and contains a stipulation for the protection of appellees in the event of Blair's failure to furnish releases of all existing liens. Having provided in the contract for protection against existing liens, appellees are not entitled to a

rescission of the contract, even if Blair falsely represented that no such liens existed. (Southern Development Co. v. Silva, 125 U. S., 247.) This disposes in appellant's favor of all of the assignments of error which complain of the action of the court in submitting to the jury any question in reference to liens upon the cattle, and in admitting testimony in reference thereto.

The trial court should have given appellants' special charge number 7, directing the jury to disregard a letter from appellee Baird to his agent Jones, because the evidence failed to show that appellants were connected with, had any knowledge of, or were in any wise bound by the letter. (Ellis v. Randle, 24 Texas Civ. App., 480.)

Among other things the court instructed the jury as follows:

"If you believe from the evidence that at the time the defendant Blair entered into said contract with plaintiffs of September 12, 1903, that he did not then intend to honestly deliver or permit the honest delivery of the cattle according to the contract, but intended to induce false certificates to be made by W. W. O'Neal or his deputies, as to the delivery of said cattle, and you believe from the evidence that the plaintiffs relied upon the agreement of the said Blair that the said cattle should be delivered to them, and would not have entered into the contract but for such reliance, and you believe from the evidence that the defendant Blair did thereafter induce W. W. O'Neal, or his deputy, to make certificates falsely certifying that cattle had been tallied and delivered to the plaintiffs, and that such cattle so certified to had not actually been delivered to said plaintiffs but had merely been tallied out in the absence and without the knowledge or presence of the plaintiff's agent, Jesse Jones, and that in making such tallies that said O'Neal fraudulently refrained from notifying said Jones in order that he might be present, then, if you so believe, your verdict will be for the plaintiffs."

Several tenable objections are urged against this charge. By the terms of the contract, O'Neal was the joint agent of the parties; and, unless it had been shown that he had conspired with appellant Blair to defraud appellees, appellants would not be responsible for any misconduct on the part of O'Neal. No evidence tending to establish such conspiracy or showing fraudulent conduct on the part of O'Neal was produced. The charge was also misleading because it implied a difference between tallying and delivery of the cattle, while the contract and testimony showed that they were one and the same thing.

Appellants requested and the court refused the following special instruction:

"With regard to the provisions stated in the contract as to the estimate of 350 steers one year old and 115 two year old and up, you are instructed that same is not an absolute representation by defendant Blair that there were 350 head of one year old and 115 head of two year olds and up, but that same was merely an estimate based upon certain facts, and if, therefore, you believe from the evidence that during the negotiations which finally resulted in the contract, the said Blair, or his agent, Evans, stated to the plaintiff Baird, that the basis for said estimates was the number of steers carried by said Blair to the range in Eddy County, New Mexico, in 1901; the number purchased by him subsequent to that time and turned into his herd on said range; the number of

steers in his calf crops for the years 1901 and 1902, and the number of head of steers sold by him out of his herd; and that said statements as to the basis for said estimates were fairly and truthfully made, then you will find for the defendants on the issue as to the number of head of steers, although you may further believe that said number of steers on said range did not amount to 350 ones and 115 twos and up, but to very much less. Or, if you find that said statements as to the basis of the estimates of 350 one year old steers and 115 two years olds and up, were honestly made by said Blair and believed by him to be true, then you will find for defendant on said issue, although you may believe that said statements were not true."

The court having submitted the plaintiffs' theory of fraud, based upon alleged misrepresentations as to the number of steers, the requested instruction should have been given. It affirmatively presented appellants' theory upon that subject. Inasmuch as the contract does not undertake to specify the number of cattle owned by appellant Blair, and gives estimates only in regard to numbers, we are of opinion that appellees are not entitled to a rescission, unless it be shown that there was a material deficiency in the number, and that appellees were injured by the representations in reference thereto. (Moore v. Cross, 87 Texas, 557.) Furthermore, we agree with appellants that if the estimates stated in the contract were based upon reasonable data, and were honestly believed by Blair to be true, appellees are not entitled to a rescission, although he may have been mistaken in reference to the number of cattle, and may have represented to appellees that there were more than actually existed. The charge of the court was not altogether in harmony with these views.

Error is assigned upon the action of the court in refusing the following requested instruction: "If you find and believe from the evidence that the method or plan of tallying out the cattle by bobbing their tails, was done contrary to the contract and the custom of the country, and without the knowledge and consent of the plaintiffs, or that, with the knowledge thereof, the plaintiffs did not ratify and confirm the same and are thereby not estopped as heretofore charged, and you should also find and believe from the evidence that said method or plan was a reasonable one, taking into consideration the condition of the cattle, the range and the facilities with which to brand the cattle and the injury, if any, to the cattle by branding same under such conditions, and that the bobbing of the tails of said cattle would distinguish and identify said cattle so tallied in said manner for a period of two years from the cattle not tallied, if any, and that thereby plaintiffs have not been injured, then you will find for defendants on that issue, even though you may believe from the evidence that both Blair and O'Neal intended thereby to defraud the plaintiffs."

The court had already instructed the jury as follows: "If you believe from the evidence that it was agreed as a part of the written contract of September 12, 1903, that the cattle sold to plaintiffs Laura Jones and W. L. Baird, were to be tallied out and delivered to them by branding them for identification upon delivery, and you believe from the evidence that such agreement as to branding was omitted from the terms of said

contract by inadvertence or mutual mistake of the parties to same, and you further believe from the evidence that at the time said Blair made such agreement as a part of said contract (if he did) that he did not intend to tally out said cattle or permit same to be tallied out and identified by means of branding them, and you believe from the evidence that plaintiffs relied upon said agreement as to branding, and would not have entered into the contract but for same, and you further believe that the defendant Blair has fraudulently induced W. W. O'Neal to deviate from such agreement in the method of tallying them, from branding to bobbing their tails, and the cattle which it is claimed have been delivered to said plaintiffs have been so tallied by means of bobbing their tails instead of branding them, then your verdict will be for the plaintiffs, unless you believe from the evidence that the plaintiffs, after the contract was made, waived the right to have said cattle tallied by means of branding them, and in case you believe they did make such waiver, then you can not find for plaintiffs under this paragraph of this charge."

The paragraph last quoted presented the appellees' theory of the case but omitted the question of injury. It is well settled that a court of equity will not rescind and cancel a contract, unless it be shown that substantial injury will result unless such relief is granted. The charge given omitted that important feature and the requested instruction would have supplied that omission, and it should have been given.

We also hold that the court erred in directing the jury that if they found against the defendant Blair to also find against the bank. By the terms of the contract, the $10,000 cash payment was to be made by appellees in the performance of their part of the contract; and if the $3,000 sent by appellee Baird to the bank was intended as part payment of the $10,000 referred to, then the payment so made became Blair's money, and its subsequent payment to the bank did not authorize a recovery against the bank.

We also sustain appellants' contention that, by the terms of the contract, appellant Blair was only required to take the steers that were gathered by December 1, 1903, and a refusal to accept steers after that time constituted no breach of the contract and afforded no ground for rescission.

Without holding that the failure to do so constitutes reversible error, we concur with appellants in the view that it was the duty of the trial judge, unless the case had been submitted on special issues, to construe the written contract and advise the jury as to its legal effect.

The objection urged against so much of the judgment as decrees to appellees certain horses and other personal property therein described, upon the ground that the verdict does not authorize such relief, may, to some extent, be well taken; but this objection can be easily avoided upon another trial.

Appellants complain because the court refused a requested instruction to the effect that if appellees had fraudulently misrepresented the value and productive capacity of the land sold by them to appellant Blair, they would not be entitled to recover in this suit. 24 American and English Ency. Law, 624, and cases there cited, seem to support appellants' proposition to the effect that where the complaining party is

guilty of fraudulent conduct in procuring the contract, the court will refuse to grant him a rescission, although his adversary may have overreached and defrauded him. Speaking for himself only, the writer of this opinion believes that the law should be declared and applied in accordance with appellants' contention. However, this identical question was presented to our Supreme Court in Chaney v. Coleman, 77 Texas, 100, and that court ruled otherwise, and this court feels constrained to follow that decision.

Several other questions are presented in appellants' brief, but this opinion will not be extended for the purpose of considering them in detail. They have been duly considered, and upon all of them we rule against appellants. We hold that the pleadings and evidence present questions of fraud in reference to representations made by appellant Blair concerning the number of cattle of the different classes owned by him and sold to appellees.

On account of the error heretofore pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Writ of error dismissed for want of jurisdiction.