Anthony J. RICH et ux., Appellants,

v.

James A. McMULLAN et ux., Appellees.

No. 15222.

Court of Civil Appeals of Texas, San Antonio.

Feb. 13, 1974.

Rehearing Denied March 13, 1974.

Putman & Putman, William H. Ferguson, San Antonio, for appellant.

Biery, Biery, Davis & Myers, San Antonio, for appellee.

CADENA, Justice.

Plaintiffs, James A. McMullan and wife, Ann R. McMullan, filed this suit to compel defendants, Anthony Rich and wife, Doris Rich, to specifically perform an earnest money contract whereby defendants agreed to sell and plaintiffs agreed to buy defendants' homestead. Defendants appeal from a summary judgment ordering them to convey the property.

By their third point defendants urge that the trial court erred in granting summary judgment because the premises which are the subject of the contract constitute the homestead of defendants.

For many years, following the decision in Jones v. Goff, 63 Tex. 248 (1885), it was held that an executory contract for the sale of a homestead was not specifically enforceable. However, this rule was based on the provisions of statutes which

required that the consent of the wife to the conveyance of the homestead (made necessary by Article XVI, Section 50, of the Texas Constitution, Vernon's Ann.St.) should be evidenced by ". . . the wife joining in the conveyance, and signing her name thereto, and by her separate acknowledgment thereof taken and certified to before the proper officer, and in the mode pointed out in articles 6605 and 6608." Article 1300, Vernon's Tex.Rev. Civ.Stat.Ann. (1967). Articles 6605 and 6608, Vernon's Tex.Rev.Civ.Stat.Ann. (1967), required that the wife, in her separate acknowledgment, state that she wishes not to retract it.

■ The decisions holding that an executory contract to convey a homestead cannot be specifically enforced were based on the statutory provisions in force prior to January 1, 1968. Because of the repeal of Articles 1300, 6605 and 6608, and the enactment of our Family Code, V.T.C.A. particularly Sections 4.03 and 5.81, an executory contract for the sale of a homestead is now specifically enforceable against the wife. Allen v. Monk, Tex.Sup., 505 S.W. 2d 523 (1974). Defendants' third point is overruled.

Defendants' second point urges that the contract in question is ". . . inadequate and insufficient for specific performance . . ." for various reasons.

■ Defendants' argument that the contract ". . . does not show that a consideration was received for its execution" must be rejected. Plaintiffs' promise to purchase the property for the price stated in the contract is sufficient consideration for defendants' promise to convey. 13 Tex.Jur.2d, Contracts, Sections 51, 52, pp. 186–88.

The contract is complete on its face, and there is no suggestion that the description of the property to be conveyed is inadequate. Defendants assert in their brief that the contract is ". . . replete with condition precedents that must be met

. . . ." and that "[f]ew, if any, condition precedents have been met in this purported contract." Defendants argue that no "commitments" necessary in such transaction have been furnished, and that there is no evidence that such commitments could be obtained. The nature of these "commitments" is not clearly disclosed by defendants' brief, but we assume that defendants have reference to a commitment by a lending institution to make the loan required by plaintiffs in order to purchase the property and a commitment by a title company to issue the title policy which, under the contract, defendants bound themselves to furnish to plaintiffs.

■ The summary judgment record establishes conclusively that plaintiffs timely applied for the required loan, but that defendants refused to allow a representative of the lending institution to "come upon the property" for the purpose of appraising it. At the time they denied such permission to the representative of the lending agency, defendants announced that they ". . . were not going through with the sale." This repudiation of the contract by defendants occurred within nine days after the execution of the contract, and during that period defendants twice made such repudiation known to plaintiffs. Even if it be assumed that the contractual provision to the effect that the contract was subject to plaintiffs' ability to secure a loan was inserted in the contract for the protection of defendants, the grantors, rather than for the protection of plaintiffs, the grantees, defendants cannot urge as a defense the failure of plaintiffs to secure the loan. It is elementary that one who prevents or makes impossible the performance of a condition precedent upon which his liability under a contract is made to depend cannot avail himself of its nonperformance. 17 Amer.Jur.2d, Contracts, Section 427, p. 882.

■ It was not the obligation of plaintiffs under the contract to furnish a title policy. If defendants wish to rely on

their lack of title as a defense to the suit for specific performance, the burden was on them to show their lack of title and consequent impossibility of performance. We cannot assume that defendants assumed an obligation that they could not perform. On the contrary, in the absence of evidence to the contrary, it will be presumed that a person who enters into a contract did not assume an obligation that he could not perform. Masterson v. Amarillo Oil Co., 253 S.W. 908 (Tex.Civ.App.)—Amarillo 1923, writ dism'd). The burden of proving impossibility of performance of a contract rests on the party asserting such defense. 17A C.J.S. Contracts § 590, p. 1145.

■ Plaintiffs, by affidavit, asserted that they were ready, willing and able to perform their obligations under the contract. This statement stands unchallenged, and there is nothing in the record to suggest that plaintiffs are not ready or able to perform their contractual obligations fully. Defendants' assertion that specific performance is precluded because none of the necessary instruments, including a deed of trust, have been prepared or executed is without merit, in the face of defendants' early and unequivocal repudiation of the contract.

By their first point defendants insist that summary judgment in favor of plaintiffs was precluded by the presence of genuine issues of material facts ". . . in that there were essential changes to be made in the contract and negotiations to be had before the finalization of the contract . . . ."

The contract, executed September 13, 1972, provided that the sale should be "closed" and possession of the premises should be delivered to plaintiffs 46 days from the date of the contract, or as soon thereafter as possible. The contract also placed on defendants the obligation of furnishing a certificate to the effect that the central heating and air conditioning systems were in good working order. It is

defendants' position that, since they signed the contract with the understanding that the provision concerning delivery of possession was to be modified so as to give defendants more time and the provision concerning the condition of the heating and air conditioning systems was to be deleted, and such changes in the contract were not made, they are excused from performance.

In this connection, defendants' pleadings are to the effect that they ". . . would not have become parties to the . . . contract . . . save and except for the fraud and deceit of Naylor Realty, Inc.," and that ". . . only due to the false and misleading representations of their agent and/or employee, were they induced to sign . . . ." the contract. These allegations and the authorities cited in defendants' brief establish that defendants are seeking to avoid liability on the contract on the basis of fraud.

The undisputed facts show that Mrs. Nancy Phillips, an associate of Naylor Realty, Inc., acted as agent in the transaction. Although the defendants' affidavits and depositions refer to Mrs. Phillips as their agent and representative, plaintiffs acknowledge that the record at least raises a question of fact as to whether Mrs. Phillips was the sole agent of defendants or the mutual agent of plaintiffs and defendants. The summary judgment "evidence" establishes that, at the time they signed the contract, defendants made known to Mrs. Phillips that they could not vacate the premises within 46 days, and that they would not be able to deliver possession until ". . . after January 1, 1973." They also told Mrs. Phillips that they would be unable to furnish the certificate, required by the contract, to the effect that the heating and air conditioning systems were in good working order. They signed the contract only after Mrs. Phillips assured them that the contract would be subsequently changed, or a new contract would be executed, incorporating their desires with reference to the date of delivering possession

and the furnishing of the certificate. It is undisputed that these changes were not made before the defendants repudiated the contract nine days after it was executed.

As already pointed out, defendants in their answer do not allege that plaintiffs made any representations relating to changes in the contract. There is no allegation to the effect that plaintiffs were guilty of fraud or deceit. There are no allegations indicating that plaintiffs knew of defendants' objections to the contract as signed, or that they were ever informed, either by Mrs. Phillips or by defendants, of the changes defendants desired. In short, there are no allegations, and there is no summary judgment proof indicating that plaintiffs participated in, consented to or were aware of the alleged fraud perpetrated upon defendants by, according to their pleadings, Naylor Realty, Inc.

Plaintiffs, as movants for summary judgment, of course, had the burden of establishing as a matter of law the absence of any genuine issue of fact as to the essential elements of their cause of action. Gibbs v. General Motors Corp., 450 S.W.2d 827 (Tex.1970). However, where, as here, plaintiff moves for summary judgment in an action where defendant has pleaded an affirmative defense, the movant is entitled to summary judgment if he demonstrates that there is no genuine issue of material fact as to the elements of his cause of action, unless the opponent comes forward with a showing that there is such a disputed fact issue relating to the affirmative defense. Hudnall v. Tyler Bank & Trust Co., 458 S.W.2d 183 (Tex.1970).

Fraud is an affirmative defense to an action to enforce a contract. Rule 94, Texas Rules of Civil Procedure; Reed v. Buck, 370 S.W.2d 867 (Tex.1963). Insofar as this affirmative defense is concerned, the burden was on defendants, in resisting plaintiffs' motion for summary judgment, to come forward with summary judgment proof at least sufficient to raise an issue of fact on the question of fraud.

We find nothing in the record which even suggests that the fraud, if any, of the real estate agent can be attributed to plaintiffs. Under these circumstances, defendants cannot avoid their obligation on the ground of the alleged fraud of the mutual agent of the parties. Blair v. Baird, 43 Tex.Civ. App. 134, 94 S.W. 116 (1906, writ dism'd). Cf. Guadalupe-Blanco River Authority v. City of San Antonio, 145 Tex. 611, 200 S. W.2d 989, 997 (1947).

The judgment of the trial court is affirmed.