HERITAGE LIFE INSURANCE COMPANY, Appellant,

v.

HERITAGE GROUP HOLDING CORPORATION, Appellee.

No. 05–87–00570–CV.

Court of Appeals of Texas, Dallas.

April 27, 1988.

Rehearing Denied June 9, 1988.

Kelly Akins, Janet E. Atkins, Dallas, for appellant.

Blair G. Francis, Dallas, for appellee.

Before HOWELL, STEWART, and ROWE, JJ.

## ON MOTION FOR REHEARING

ROWE, Justice.

The opinion of this Court of February 16, 1988, is withdrawn, and the following opinion is substituted.

After a summary judgment in favor of Heritage Group Holding Corporation (Buyer), Heritage Life Insurance Company (Seller) appeals the judgment returning $10,000 in earnest money to Buyer. Seller asserts that the trial court erred in granting Buyer's motion for summary judgment and in denying Seller's motion for summary judgment. Buyer asserts a "cross-point" challenging the jurisdiction of this Court based on an untimely filed cost bond.

For the reasons stated below, we overrule the jurisdictional challenge and decide the appeal on its merits. We hold that the summary judgment proof establishes beyond dispute that Buyer is not entitled to return of the $10,000 earnest money. Accordingly, we reverse the summary judgment in favor of Buyer and render summary judgment in favor of Seller that Buyer take nothing. Seller's claim for attorney fees, asserted in an improperly brought declaratory judgment action, is denied.

This case evolves from the proposed sale of Heritage Life Insurance Company of Texas (Heritage of Texas) by Seller to Buyer by way of a 100 percent stock buyout. The initial contract of sale was executed by the Seller and by Clyde Fortenberry and C.H. McCoy who later assigned their rights to Buyer, a corporation owned 75 percent by McCoy and 25 percent by Fortenberry. The contract, in various sections, provided for a $250,000.00 sale price, compliance with the Texas insurance laws, a $10,000.00 earnest money deposit by the Buyer, and

optional rescission by either party if approval of the sale was not given by the Texas Insurance Commission by July 15, 1985, later extended to September 20, 1985. It is uncontroverted that the Commission's approval was not gained by September 20, 1985, at which time Buyer demanded return of the earnest money. Seller refused to return the earnest money; and, consequently, this suit was brought.

■ Before reaching the substantive matters on appeal, we first address Buyer's jurisdictional "cross-point." Rule 41 of the Texas Rules of Appellate Procedure[1] requires the cost bond to be filed no later than 90 days after the judgment is signed when a motion for new trial has been made. The filing of a cost bond is required under Rule 40 in order to perfect an appeal. In this case Seller failed to timely file its bond but applied for an extension of time to so file within 15 days as per Rule 41(a)(2). Buyer opposed Seller's motion, but this Court granted the motion following its traditional holdings in this area. In its brief on appeal, Buyer reargues this ruling by way of a "cross-point." We reaffirm our previous ruling.

Rule 41(a)(2) allows an appellate court to extend the time to file the cost bond if the bond is "filed not later than fifteen days after the last day allowed and, within the same period, a motion is filed in the appellate court reasonably explaining the need for such extension." The controversy in this case concerns what constitutes a "reasonable explanation." The Texas Supreme Court has held that "reasonably explaining" means "any plausible statement of circumstances indicating that failure to file within the [prescribed time period] was not deliberate or intentional, but was the result of inadvertence, mistake or mischance." *Meshwert v. Meshwert*, 549 S.W.2d 383, 384 (Tex.1977). In the case at bar, it appears that Seller's attorney miscalculated the due date by not properly applying Rule 41's "90 days from judgment" rule but by applying

1. All subsequent citations to rules will refer to the Texas Rules of Appellate Procedure unless stated otherwise.

instead the repealed rule which calculated the due date from the order denying a motion for new trial. Although the attorney may have been mistaken as to the applicable law, it is clear that the mistake was not deliberate or intentional. Therefore, we hold that an attorney's miscalculation of the date upon which a cost bond is due stemming from a mistake in law is a "reasonable explanation" sufficient to satisfy Rule 41(a)(2). *United States Fire Insurance Co. v. Stricklin,* 547 S.W.2d 338, 340 (Tex.Civ.App.—Dallas 1977, no writ).

■ Buyer relies on the case of *Home Insurance Co. v. Espinoza,* 644 S.W.2d 44 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.), which directly opposes our holding in this case. Under similar facts, the Corpus Christi Court held that the failure to timely file a cost bond resulting from an attorney's failure to adequately familiarize herself with the basic rules of appellate procedure does not constitute a reasonable explanation as a matter of law. *Id.,* at 45. We view the Corpus Christi Court as following the "reasonable diligence" standard. This standard was rejected by Justice Guittard in his dissenting opinion in *Sloan v. Passman,* 538 S.W.2d 1, 1 (Tex.Civ.App.—Dallas 1976) (Guittard, J., dissenting, approved in *United States Fire Insurance Co. v. Stricklin,* 547 S.W.2d 338 (Tex.Civ. App.—Dallas 1977, no writ)). Justice Guittard followed the *"Craddock"* standard of inadvertence, mistake, or mischance. This same language was used by the Texas Supreme Court in *Meshwert,* 549 S.W.2d at

384. Under *Mershert, Stricklin,* and *Sloan,* the "reasonable explanation" required by Rule 41(a)(2) focuses on a lack of deliberate or intentional failure to comply. *See Meshwert,* 549 S.W.2d at 384. Anything short of deliberate or intentional noncompliance falls within the area of inadvertence, mistake, or mischance. Consequently, we decline to follow *Espinoza* and overrule Buyer's "cross-point."

We now turn to Seller's substantive points of error. Seller complains in point of error number one that the trial court erred in granting summary judgment for Buyer. In point of error number two, Seller asserts that the trial court erred in denying summary judgment for Seller. Since both of these points of error concern the same facts and legal issues, we address them concurrently.

The rights and obligations of the parties in this case are controlled by the contract. The contract covers nine pages but has six clauses relevant to this appeal. Section 1.1 [2] provides that 100% of the stock of Heritage of Texas will be transferred. Section 3.4 [3] provides that Buyer will acquire title to all assets of Heritage of Texas. Section 5.1 [4] provides that the sale is subject to the approval of the Commissioner of Insurance of the State of Texas and that Article 21.49–1 of the Texas Insurance Code will be complied with. Section 5.2(b) [5] provides that Buyer's obligations are conditioned on there being no material breaches of Seller's representations and warranties.

---

**2.** Section 1.1 provides:
> Seller agrees that at the closing hereunder, Seller will sell, transfer and deliver to the Buyer for consideration hereinafter provided, one hundred percent (100%) of the outstanding stock of Heritage.

**3.** Section 3.4 provides:
> Seller represents and warrants that Heritage will have good and marketable title to all of its properties and assets, including those reflected in the aforesaid financial statement attached hereto.

**4.** Section 5.1 provides:
> This entire Agreement is subject to the prior approval by the Commissioner of Insurance of the State of Texas after full compliance

with all of the conditions precedent required by Article 21.49–1 of the Texas Insurance Code known as the Insurance Holding Company System Regulatory Act, and this instrument shall not be construed as an agreement to acquire control of a domestic insurer prior to compliance with the prerequisites of said Insurance Holding Company System Regulatory Act.

**5.** Section 5.2 provides:
> The obligations of Buyers under this agreement are subject to fulfillment of each of the following conditions prior to and at the Closing:
> (b) There shall not have been any material breach of the representations or warranties of Seller contained in this Agreement.

Section 7.1 [6] provides that if the approval by the Commissioner of Insurance is not secured by July 15, 1985 (later extended to September 30, 1985), either party may terminate the agreement. Section 11.1 [7] provides for the disposition of $10,000 in earnest money.

The record reveals that approval by the Commissioner of Insurance was never obtained. It also reveals that, prior to the section 7.1 approval cut-off date, Buyer made a decision to no longer attempt to comply with the Commissioner's required disclosures due to the high cost of such compliance. In addition, the record reveals that during the same time period Seller notified Buyer that it planned to continue selling insurance in Texas under Seller's (parent company) name; and, therefore, it questioned whether the Commissioner would allow Buyer to continue using the Heritage of Texas (subsidiary) name since the names were so similar.

Buyer's motion for summary judgment and its defense on appeal centers around sections 7.1 and 11.1 of the contract which give an option to rescind with full reimbursement if the Commissioner of Insurance has not approved the sale prior to a specified date. Buyer contends that the proper construction of these sections mandates the return of its earnest money no matter what caused the Commissioner not to approve the sale. We disagree with this construction.

Neither party has pleaded ambiguity in this case; therefore, the construction of the contract is a question of law for the courts. *Westwind Exploration, Inc. v. Homestate Savings Association,* 696 S.W.2d 378, 381

(Tex.1985). Buyer would have this Court look to sections 7.1 and 11.1 wearing blinders. However, to ascertain the true intent of the parties, courts must consider the entire writing, giving effect to all provisions of the contract. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). "No single provision taken alone will be given controlling effect." *Id.* We must read sections 7.1 and 11.1, therefore, in conjunction with section 5.1 which sets out the effect of the Texas insurance laws on this contract.

Section 5.1 appears in the contract under the heading "Representations and Warranties by Buyer" and is the first provision which specifies that the agreement is subject to approval of the Commissioner of Insurance. Section 5.1, however, also provides that this approval will come *"after full compliance with* all of the conditions precedent required by Article 21.49–1 of the Texas Insurance Code ..." (emphasis ours). Article 21.49–1(5) of the Texas Insurance Code Annotated (Vernon 1981) itemizes the filing requirements to be met by persons seeking to obtain control of a domestic insurer, including the filing of financial statements of the buyers. Since this Court must favor that construction of a contract which gives effect to every clause as used by the parties, *Westwind Exploration, Inc.,* 696 S.W.2d at 382, we view section 5.1 as modifying both sections 7.1 and 11.1. When the sections are thusly integrated, Buyer becomes affirmatively obliged to file all documents authorized by article 21.49–1 which the Commissioner requests as being relevant to his decision of approval. The record reflects that Buyer willfully failed to furnish the Commissioner with certain financial information he re-

6. Section 7.1 provides:
   Upon written approval of this Agreement and transaction by the Commissioner of the Texas State Board of Insurance, closing of this Agreement shall take place within ten days therefrom, or a longer period of time mutually acceptable to all parties, for preparation and execution of all closing documents.... If the securing of such approval by the Commissioner of Insurance has not been accomplished by July 15, 1985, either party hereto may at their option terminate this Contract by giving the other party notice of such termination.

7. Section 11.1 provides:
   ... If the approval of the Commissioner of the Board of Insurance of the State of Texas is obtained and Buyers fail to perform their obligations under this Agreement, the Ten Thousand Dollars ($10,000.00) earnest money will be forfeited to Seller. If the Commissioner of the Board of Insurance of the State of Texas does not approve this Agreement, the Ten Thousand Dollars ($10,000.00) earnest money will be returned to Buyers.

quested, to wit: five years of audited financial statements from both McCoy and Fortenberry.

The willful failure to comply with the requests of the Insurance Commissioner precludes Buyer from relying on the Commissioner's failure to approve the sale. *Rich v. McMullan*, 506 S.W.2d 745, 747 (Tex.Civ.App.—San Antonio 1974, writ ref'd n.r.e.); *Sargent v. Highlight Broadcasting Co.*, 466 S.W.2d 866, 867 (Tex.Civ. App.—Austin 1971, no writ); and *see Sanderson v. Sanderson*, 130 Tex. 264, 109 S.W. 2d 744, 749 (Tex.Comm'n App.1937, opinion adopted).

The *Rich* case involved a real estate sale that was conditioned on the buyer's obtaining a loan. The San Antonio Court held that the seller could not defend against a suit for specific performance by alluding to the fact that the buyer never obtained a loan when the seller did not comply with the bank's request for access to the property, the bank's access being necessary in order to appraise the property as part of the bank's loan approval process. *Rich*, 506 S.W.2d at 747. The *Sargent* case involved a sale of a business which was made dependent on the approval of the Federal Communications Commission. When one party to the sale failed to execute the documents necessary to obtain approval of the Commission, that party was precluded from relying on the fact that the Commission had not approved the sale. *Sargent*, 466 S.W.2d at 867.

In this case Buyer made an affirmative decision to stop and did stop complying with financial information requests of the Insurance Commissioner prior to the September 30, 1985, optional termination date. This willful nonperformance by Buyer of its obligation under the contract negated any possibility of approval by the Insurance Commissioner and brought into play the equitable principle that one may not profit by his own wrong. Accordingly, we hold that in its action for return of the earnest money under the sales contract Buyer cannot be heard to assert that the Insurance Commissioner's approval was never obtained. See 31 C.J.S. Estoppel § 59(d)(1964); 17 Am.Jur.2d *Contracts* § 427 (1964); *see* RESTATEMENT (SECOND) OF CONTRACTS § 245 (1981).

Buyer argues under its good faith contentions that its refusal to comply was justified by the burdensomeness of the requests. Buyer asserts that the requiring of five years of audited financial statements from both McCoy and Fortenberry was so burdensome as to be unreasonable. It is axiomatic that a contractual obligation cannot be avoided simply because the obligation becomes more burdensome than anticipated. *Alamo Clay Products, Inc. v. Gunn Tile Company of San Antonio, Inc.*, 597 S.W.2d 388, 392 (Tex.Civ.App.— San Antonio 1980, writ ref'd n.r.e.); *Mahrer v. Mahrer*, 510 S.W.2d 402, 405 (Tex.Civ. App.—Dallas 1974, no writ). Furthermore, there is a presumption that a party who enters a contract did not assume an obligation that he could not perform. *Rich v. McMullen*, 506 S.W.2d 745, 748 (Tex.Civ. App.—San Antonio 1974, writ ref'd n.r.e.). Thus mere burdensomeness is not a justification—the burden must be so great as to be unreasonable under those particular circumstances which exist.

Article 21.49–1(5)(c)(3) of the Texas Insurance Code Annotated (Vernon Supp. 1988) requires that corporate buyers provide five years' audited financial statements. However, the requirements for individual buyers may be more or less stringent since such is left to the discretion of the Commissioner. It is not unreasonable to require an individual to provide the same information that he knows a similarly placed corporation is required to file.

In addition, Buyer argues that it is entitled to return of its $10,000.00 earnest money deposit because Seller anticipatorily breached the sales contract by notifying Buyer not to expect Seller's authorization for full use of the acquired corporation's name. Section 1.1 of the contract provided that Buyer was to acquire 100% of the stock of Heritage of Texas. This ordinarily means that Buyer acquired title to all assets of Heritage of Texas, including a property right in its name. The contract, how-

ever, is silent regarding the effective *use* of that name.[8]

Since neither party pleaded ambiguity in the contract, the ramifications of silence in the contract is a question of law for the courts. *Westwind Exploration, Inc.*, 696 S.W.2d at 381. Section 9.1 of the contract specifies that the document "contains the entire Agreement between Seller and Buyers with respect to the subject matter hereof ..." Although the contract expressly warrants good and marketable title to all corporate assets, it does not warrant their future value or usefulness. Consequently, we hold that upon transfer of the agreed title, Seller had no further obligations with respect to the assets. To hold otherwise would be to read provisions into the contract which the evidence will not support as having been bargained for by the parties. Seller did not anticipatorily breach the contract when it notified Buyer that it would not protect the *use* of the Heritage of Texas name because no such protection is afforded by the terms of the contract.

■ The final support of Buyer's summary judgment is an equitable argument of unjust enrichment. However, the contract in section 11.1 specifically and expressly controls the distribution of the earnest money in this case. Therefore, the equitable remedy is not available. *LaChance v. Hollenbeck*, 695 S.W.2d 618, 620 (Tex. App.—Austin 1985, writ ref'd n.r.e.); *Morales v. Dalworth Oil Co., Inc.*, 698 S.W.2d 772, 774 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.).

For the reasons stated above, the trial court improperly granted summary judgment for Buyer, and Seller's first point of error is sustained. For the same reasons, the trial court improperly denied summary judgment for Seller that Buyer take nothing with respect to its earnest money claim. We hold that as a matter of law Buyer was under an obligation to file all documents required by the Commissioner of Insurance, that the filing requirements imposed by the Commissioner were not overly burdensome, and that Buyer's willful refusal to so file forfeits its rights to the earnest money. Further, we hold that since the contract did not cover the protected use of the Heritage of Texas name, Seller did not anticipatorily breach the contract by notifying Buyer that use would not be authorized. Accordingly, to the extent Seller's second point of error seeks rendition of a summary judgment that Buyer take nothing, such point of error is sustained.

■ Seller also complains by its second point of error that the trial court erred in dismissing its counterclaim for declaratory judgment under which it was entitled to attorney fees. TEX.CIV.PRAC. & REM. CODE ANN. § 37.009 (Vernon 1986). The Declaratory Judgment Act, however, is not available to settle disputes already pending before a court. *Johnson v. Hewitt*, 539 S.W.2d 239, 240–241 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ); *Joseph v. City of Ranger*, 188 S.W.2d 1013, 1014 (Tex.Civ.App.—Eastland 1945, writ ref'd w.o.m.). Seller's counterclaim in this case sought a declaratory judgment that Buyer had breached its duties under the contract and that Seller was entitled to keep the $10,000 earnest money. This counterclaim merely restates Seller's defenses to issues already raised under Buyer's action for return of the earnest money. Thus, Seller is not entitled to relief under the Declaratory Judgment Act in the form of a counterclaim. The identical conclusion was heretofore reached by this Court in *Narisi v. Legend Diversified Investments*, 715 S.W. 2d 49, 51–52 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). In *Narisi* we recognized that a counterclaim under the Declaratory Judgment Act, presenting no new controversies

---

**8.** Mere acquisition of an asset does not guarantee that the asset will have any useful value. In this case, it was forseeable that the split in ownership between parent and subsidiary would diminish the utility of the subsidiary's name for any future insurance business in Texas. The parent had a noticeably similar name and was engaged already in the same business.

More importantly, the Insurance Commissioner of Texas, and not the parent, would ultimately decide what name Buyer could use in its new business. Despite these obvious factors, the written contract under review does not allude to any matters directly pertinent to Buyer's continued use of the subsidiary's name.

but brought solely to pave an avenue to attorney fees, was not proper. However, the party's failure to specifically object to the award of attorney fees precluded the appellate court from granting relief. In our current case, the trial court properly denied Seller's claim on attorney fees, and we follow *Johnson, Joseph,* and *Narisi* in overruling Seller's contention in its second point of error that the trial court erred by dismissing its counterclaim for attorney fees.

The trial court's summary judgment in favor of Buyer is reversed, and judgment is here rendered that Buyer take nothing. Seller's claim for attorney fees is denied.