Paul Reed and Deborah Marino

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-01-327-CV

PAUL REED AND DEBORAH MARINO APPELLANTS

V.

BARRY KAGAN APPELLEE

------------

FROM COUNTY COURT AT LAW NO. 2 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1) ON REHEARING

------------

After reviewing Appellee Barry Kagan’s motion for rehearing, we deny the motion.  We withdraw our August 7, 2003 opinion and judgment and substitute the following. 

This case involves the dispute over a contract for the sale of a boat.  Appellee Barry Kagan (“Appellee”) sued Appellants Paul Reed and Deborah Marino (collectively “Appellants”) when they refused to complete the purchase of the boat in accordance with the contract.  Appellants asserted several affirmative defenses and counterclaims.  Appellee attempted to negate those defenses and claims by filing a motion for partial summary judgment, which the trial court granted.  After a bench trial, the court found in favor of Appellee for actual damages and attorney’s fees.  We affirm in part and reverse in part.

I.  FACTUAL SUMMARY

Appellants stated in separate affidavits attached to their response to Appellee’s motion for partial summary judgment that on September 25, 1998, they were at Lakeview Marina with some friends.  While there, Reed noticed Appellee’s boat, which was docked at the fuel pump.  After Reed expressed admiration for the boat, Appellee stated that he had another boat for sale and asked if Reed had any interest in looking at it.  Answering affirmatively, Reed followed Appellee to the other boat, which is the subject of this lawsuit.  Appellee stated that the sales price for the boat was $67,500.  While Appellee and Reed were on the boat, Larry Buck, the owner of the marina, joined them.  Buck asked Appellee, “Where’s my sign?” and Appellee pulled from a storage locker a sign stating that the boat was “For Sale by Chandry Marine.”

According to his affidavit, Reed told the other men that he was going to get his wife, Marino, to look at the boat.  After Appellants had looked at the boat and as they were walking back to meet up with their friends, Buck approached them and stated that he could get the boat for them for a lower price of $57,500.  After further discussion, Buck stated that if Appellants wanted to inspect the boat, then they needed to give him a $5,000 check and a written proposal.  Both affidavits stated that Buck emphasized that they could not take the boat out on the water until he received the check and proposal.  Buck assured Appellants that he would not cash the check but that he needed to present the check with the proposal.

The affidavits further stated that Appellants went with Buck to his office at the marina.  During their conversation about the boat, Appellants told Buck that “this was just a proposal until the boat was appraised.”  Buck assured them that the document was just a proposal.  Both Appellants expressed a desire to inspect the boat to ensure that it was worth the price.  Buck assured them that the boat was worth the price.

The proposal was written on a form used by Chandry Marine for creating work orders and invoices.  In addition to the parties’ signatures, sales price, and other miscellaneous provisions, the handwritten document contained a provision that read “Purchaser to pay for Insurance, Survey and Sales Tax.”  According to Appellants’ expert, a survey is an evaluation of a boat and a written opinion as to the condition and value of the boat.  It is similar to an appraisal.  The document also provided that the boat was “sold in as is condition.” 

After the proposal was signed by Appellants, Buck excused himself to deliver the document to Appellee, who was still at the marina.  When Buck returned, the parties discussed the hiring of an inspector to check out the boat, and Buck agreed to give the inspector the boat keys.

The inspector found problems with the boat and reported that the boat’s fair market value was less than the sales price.  Appellants then refused to purchase the boat, and Appellee sued them for breach of contract.  After filing an answer, Appellants eventually filed their first amended answer and second amended counterclaim, which pleaded a general denial of all Appellee’s claims, specific denials of Appellee’s capacity to sue, the existence of a contract, and failure of a condition precedent and affirmative defenses of fraud in the inducement, ambiguity, no acceptance, no mutual assent, mitigation of damages, measure of damages, and material alteration.  Appellants’ counterclaim portion included a request for declaratory judgment regarding the rights, status, and legal relations of the parties, Appellee’s capacity to sue, the existence of a contract, that monies paid be returned, and for attorney’s fees.  The counterclaim also included causes of action against Appellee for breach of contract, conversion, deceptive trade practices, and common law fraud.  This amended pleading was filed seven days before the hearing on Appellee’s motion for partial summary judgment.

Appellee filed a motion for partial summary judgment against Appellants arguing that their affirmative defenses of capacity to sue, failure of a condition precedent, and fraud in the inducement, as well as counterclaims for declaratory judgment, conversion, and deceptive trade practices should be denied as a matter of law.  The trial court granted the motion and ordered that Appellants take nothing with respect to their counterclaims for declaratory judgment, conversion, and deceptive trade practices.  Furthermore, the trial court denied Appellants’ affirmative defenses pertaining to Appellee’s capacity to sue, failure of a condition precedent, and fraud in the inducement.

The case was tried before the court.  Appellants attempted to introduce evidence on their affirmative defenses and counterclaims including their claim for common law fraud, but upon objection, the trial court excluded the evidence.  Appellants, however, offered several bills of exception on the evidence excluded.  The trial court ordered that Appellee recover from Appellants actual damages of $7,500, interest of $1,536.58, and attorney’s fees of $40,891.04.

Appellants timely filed a request for findings of facts and conclusions of law and a motion for new trial.  The trial court filed the findings of fact and conclusions of law, and the motion for new trial was overruled by operation of law.

II.  LEGAL ANALYSIS

Appellants raise two interrelated points.  First, they argue that the trial court erroneously granted Appellee’s motion for partial summary judgment on Appellants’ affirmative defenses, counterclaims, and motion for declaratory judgment, and second, they argue that the trial court abused its discretion in  excluding Appellants’ evidence supporting those defenses and claims. 

A.  Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.
(footnote: 2)  The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.
(footnote: 3)  Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant.
(footnote: 4) 

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true.
(footnote: 5)  Evidence that favors the movant's position will not be considered unless it is uncontroverted.
(footnote: 6) 

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law.
(footnote: 7)  A plaintiff is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element for each affirmative defense or counterclaim alleged by a defendant cannot be established.
(footnote: 8)
 B.  Common Law Fraud

In their first point, Appellants argue that they timely filed a second amended counterclaim alleging a cause of action for common law fraud.  They contend that Appellee’s motion for partial summary judgment failed to address this cause of action and that evidence relevant to the common law fraud claim should not have been excluded by the trial court.  We agree.

Summary judgment cannot be granted except on the grounds expressly presented in the motion.
(footnote: 9)  If the nonmovant timely amends its petition to add a new cause of action after the movant has filed its motion for summary judgment, the movant must amend the motion to negate the newly pleaded theory.
(footnote: 10)  A party can amend its pleadings without obtaining leave from the trial court as long as the amendment is filed seven or more days before trial.
(footnote: 11)  For purposes of Rule 63, a summary judgment proceeding is considered a trial.
(footnote: 12)
 Appellants filed their “FIRST AMENDED ANSWER AND SECOND AMENDED COUNTERCLAIM” on May 18, 2001.  The hearing was held on May 25, 2001.  Accordingly, the pleading was filed seven days before the hearing.
(footnote: 13)  We hold that Appellants’ first amended answer and second amended counterclaim were timely filed and that Appellee’s motion did not address the newly pleaded claim for common law fraud.
(footnote: 14)  We sustain Appellants’ first point to the extent Appellants argue that their counterclaim for common law fraud was not addressed in the trial court’s partial summary judgment.

C.  Capacity

Appellants alleged in their original answer that Appellee did not have the capacity to sue in this case.  Appellee argued in his motion for partial summary judgment that because both Appellants admitted that he was the seller of the boat, no genuine issue of material fact exists as to his capacity as a party to the contract, and, therefore, he has the right to sue on the contract.  We agree.
(footnote: 15)  We overrule both of Appellants’ points to the extent the points pertain to Appellee’s capacity to sue on the contract.

D.  Condition Precedent

Appellants next argue that the trial court incorrectly granted Appellee’s motion for partial summary judgment on their defense that alleged the failure of a condition precedent.  Specifically, Appellants argue that Buck orally agreed that if the boat did not appraise for the sales price, then they would not have to follow through with the contract.  They argue that an ambiguity exists as to the meaning or purpose of the survey provision because the contract also contains an “as is” warranty modification.  Consequently, according to Appellants, parol evidence is admissible to explain the meaning of the survey provision, which they allege was the basis for the condition precedent.  We disagree.

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument.
(footnote: 16)  The parties’ intentions are determined by reference to the words used in the contract.
(footnote: 17)  Every phrase, word, and provision should be harmonized so that none will be rendered meaningless.
(footnote: 18)  No single provision controls to the exclusion of another; instead, each must be considered with reference to the whole document.
(footnote: 19)
 Contracts that can be given a definite legal meaning are not ambiguous.
(footnote: 20)  However, if a contract’s meaning is uncertain and doubtful or if it is susceptible to more than one meaning, then the contract is ambiguous.
(footnote: 21)  The determination that a contract is ambiguous is a question of law for the court to decide by reviewing the whole contract in the light of the circumstances present when the contract was first executed.
(footnote: 22)
 The document in this case states that the boat is sold as is.  It also provides that the purchaser is to pay for any insurance, survey, and sales tax. Appellants argue that an ambiguity arises because of the conflict between the meaning of this latter provision and the warranty modification.  They argue that the survey clause can only be a condition precedent providing that if the boat fails the survey, then the purchasers are not required to buy it. 

“Conditions precedent to an obligation to perform are those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty.”
(footnote: 23)  Terms such as “if,” “provided that,” “on condition that,” or other limiting phrases “usually connote an intent for a condition rather than a promise.”
(footnote: 24)  If a contract fails to utilize one of the above conditional provisos, a determination of whether a contractual provision is a condition is made by determining the parties’ intent and by reviewing the entire contract.
(footnote: 25)  “[W]here the intent of the parties is doubtful or where a condition would impose an absurd or impossible result, then the agreement will be interpreted as creating a covenant rather than a condition.”
(footnote: 26)  Courts do not favor forfeitures and prefer to interpret contractual provisions as covenants instead of conditions.
(footnote: 27)
 The contract provision in this case merely states that the purchaser is to pay for a survey.  No conditional language is used to limit the effect of the contract.  Appellee’s interpretation of the provision is that if the purchasers want a survey then the purchasers must pay for the survey.  On the other hand, Appellants’ interpretation results in the forfeiture of the contract.
(footnote: 28)  We hold that the survey provision is a covenant and that the contract clearly and unambiguously provides that if the purchaser wants a survey, then the purchaser must pay for the cost of the survey.
(footnote: 29)  We hold that the trial court did not err when it granted Appellee’s partial summary judgment on Appellants’ condition precedent defense, and we overrule Appellants’ points to that extent.

E.  Fraud in the Inducement

Appellants argue that Appellee failed to show as a matter of law that there was no fraud in the inducement.  The trial court’s partial summary judgment on Appellants’ fraud in the inducement defense will be upheld only if Appellee negated at least one element of the claim.
(footnote: 30)
 A party claiming fraud in the inducement must demonstrate (1) a material misrepresentation (2) that was false, (3) that was either known to be false when made or was asserted without knowledge of the truth, (4) that was intended to be acted upon, (5) that was acted upon, and (6) that caused injury.
(footnote: 31)  Appellee argued in his motion for partial summary judgment that Appellants were precluded as a matter of law from asserting their affirmative defense of fraud in the inducement.  Appellee argued that an “as is” contract provision obviates a fraud in the inducement claim, citing 
Prudential Insurance Company of America v. Jefferson Associates
.
(footnote: 32)
 Contrary to Appellee’s interpretation, 
Jefferson Associates
 states that a buyer is not bound by a purchase agreement that contains an “as is” warranty modification when the buyer was initially induced to execute the agreement by the seller’s fraudulent misrepresentation of the item to be purchased.
(footnote: 33)  In other words, a seller cannot assure a buyer of the condition of the item to be purchased to obtain the buyer’s agreement to purchase the item “as is,” and then disavow the assurance which procured the “as is” agreement.
(footnote: 34)
 Appellee offered no evidence other than the contract to support this argument.  Appellee failed to negate at least one element of Appellants’ fraud in the inducement affirmative defense; thus he failed to meet his summary judgment burden.
(footnote: 35)  We sustain Appellants’ points as to the trial court’s denial of their fraud in the inducement claim.

F.  Declaratory Judgment

Appellants next argue that their motion for declaratory judgment raised issues that were separate and distinct from the issues raised by Appellee’s original petition.  Appellee argued in his motion for partial summary judgment that Appellants’ request for declaratory relief presented no new issue to the trial court and, therefore, should be denied.  The trial court ordered that Appellants take nothing on their request for declaratory relief.

The validity of a contract, contract construction, and the determination of a party’s rights under the contract are all issues properly resolved by a declaratory judgment.
(footnote: 36)  However, a declaratory judgment is not available to resolve issues already pending before the same court.
(footnote: 37)  Therefore, the requested declarations cannot merely duplicate a party’s denial of claims or assertions of affirmative defenses set forth in the same pleading or a prior pleading.
(footnote: 38)
 Appellee’s petition alleged in his sole cause of action that Appellants failed to pay the balance due on the contract, and, therefore, they breached their contract with him.  In the answer section of their first amended answer and second amended counterclaim, Appellants specifically denied Appellee’s capacity to sue, the existence of a contract, and that a condition precedent was met.  Appellants further pleaded the affirmative defenses of fraud in the inducement, ambiguity, no acceptance, no mutual assent, mitigation of damages, measure of damages, and material alteration.  Under the counterclaim section of the document, Appellants requested a declaratory judgment determining whether Appellee possessed the capacity to sue on the contract, whether a contract existed, whether a condition precedent had failed, and whether the deposit should be returned.  Additionally, Appellants pleaded causes of action for breach of contract, conversion, deceptive trade practices, and common law fraud.  

Because in their answer Appellants pleaded each issue presented in their request for declaratory judgment, the requested declarations were already before the trial court.
(footnote: 39)  As we have previously stated, “[w]e believe it immaterial whether the duplicative [specific denials,] affirmative defenses and counterclaims are in the same pleading or in a previous pleading.  Either way, the declaratory-judgment counterclaim presents no new controversies.”
(footnote: 40)  We overrule both of Appellants’ points to the extent the points relate to their motion for declaratory judgment.

G.  Deceptive Trade Practices and Conversion

Appellants next argue that the trial court erred when it ordered the take-nothing judgment on their deceptive trade practices and conversion claims.  Appellee argued in his motion for partial summary judgment that the statute of limitations barred both of these claims as a matter of law.  On appeal, Appellants claim that their deceptive trade practices and conversion counterclaims were based on the same transaction and occurrence as Appellee’s breach of contract claim and, therefore, are not barred by the statute of limitations.  We agree.

A counterclaim is timely filed if it meets the requirements of section 16.069 of the Texas Civil Practice and Remedies Code.
(footnote: 41)  The section provides that

(a) If a counterclaim . . . arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim . . . even though as a separate action it would be barred by limitation on the date the party’s answer is required.

(b) The counterclaim . . . must be filed not later than the 30th day after the date on which the party’s answer is required.
(footnote: 42)

Section 16.068 of the Texas Civil Practice and Remedies Code states:

If a filed pleading relates to a . . . counterclaim . . . that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.
(footnote: 43)

The contract was dated September 23, 1998.  Appellee filed his original petition on January 28, 1999.  Appellants filed their original answer and motion for declaratory judgment on February 17, 1999.  The statute of limitations for claims under the Deceptive Trade Practices Act and for conversion is two years.
(footnote: 44)  All of the causes of action before the trial court arose out of the same transaction, which was the alleged sale of Appellee’s boat to Appellants.  We therefore hold that the trial court erred when it granted Appellee partial summary judgment on Appellants’ deceptive trade practices and conversion counterclaims, and we sustain Appellants’ points on these grounds. 

III.  CONCLUSION

We reverse the trial court’s final judgment.  We reverse that portion of the trial court’s partial summary judgment that holds Appellants take nothing on their causes of action for conversion and deceptive trade practices.  We further reverse that portion of the trial court’s partial summary judgment that denies Appellant’s affirmative defense of fraud in the inducement.

We affirm that portion of the trial court’s partial summary judgment that holds in favor of Appellee on Appellants’ declaratory judgment counterclaim, and denies Appellants’ affirmative defenses of Appellee’s capacity to sue and the failure of a condition precedent.  

We remand to the trial court the breach of contract cause of action, including Appellants’ affirmative defense of fraud in the inducement and Appellants’ causes of action for conversion, deceptive trade practices, and common law fraud.

LEE ANN DAUPHINOT

JUSTICE

PANEL A: DAY, LIVINGSTON, and DAUPHINOT, JJ.

DELIVERED:  October 23, 2003

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Tex. R. Civ. P.
 166a(c); 
S.W. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).

3:
S.W. Elec. Power Co., 
73 S.W.3d at 215;
 Rhone-Poulenc, Inc. v. Steel,
 997 S.W.2d 217, 223 (Tex. 1999); 
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).

4:
Great Am.
, 391 S.W.2d at 47.

5:
Rhone-Poulenc,
 997 S.W.2d at 223; 
Harwell v. State Farm Mut. Auto. Ins. Co.
, 896 S.W.2d 170, 173 (Tex. 1995).

6:
Great Am.
, 391 S.W.2d at 47.

7:
Clear Creek Basin
, 589 S.W.2d at 678.

8:
See Elliott-Williams Co. v. Diaz
, 9 S.W.3d 801, 803 (Tex. 1999) (stating that a defendant must negate at least one element of the plaintiff’s cause of action to be entitled to summary judgment as a matter of law); 
see also Lear Siegler, Inc. v. Perez
, 819 S.W.2d 470, 471 (Tex. 1991).

9:
Johnson v. Brewer & Pritchard, P.C., 
73 S.W.3d 193, 204 (Tex. 2002); 
Sci. Spectrum, Inc. v. Martinez,
 941 S.W.2d 910, 912 (Tex. 1997).

10:
Johnson v. Fuselier
, 83 S.W.3d 892, 898 (Tex. App.—Texarkana 2002,  no pet.); 
Jones v. Ray Ins. Agency
, 59 S.W.3d 739, 749 (Tex. App.—Corpus Christi 2001, pet. denied); 
Rose v. Kober Fin. Corp.
, 874 S.W.2d 358, 361-62 (Tex. App.—Houston [14
th
 Dist.] 1994, no writ).

11:
Tex. R. Civ. P. 63.

12:
Rose
, 874 S.W.2d at 361; 
Jones v. Houston Materials Co.
, 477 S.W.2d 694, 695 (Tex. Civ. App.—Houston [14
th
 Dist.] 1972, no writ); 
see also Leche v. Stautz
, 386 S.W.2d 872, 873 (Tex. Civ. App.—Austin 1965, writ ref'd n.r.e.).

13:
See 
Tex. R. Civ. P. 4 
(stating that the computation of time does not include the day of the event, which in this case is the filing of the amended petition and counterclaim, but the last day of the period is included).

14:
See Johnson
, 83 S.W.3d at 898.

15:
See Nootsie, Ltd. v. Williamson County Appraisal Dist.
, 925 S.W.2d 659, 661 (Tex. 1996) (stating that a party has capacity when it has the legal authority to act); 
see also Mackie v. Guthrie
, 78 S.W.3d 462, 465 (Tex. App.—Tyler 2001, pet. denied).

16:
Coker v. Coker
, 650 S.W.2d 391, 393 (Tex. 1983).

17:
S.W. Sav. Ass’n v. Dunagan
, 392 S.W.2d 761, 767 (Tex. Civ. App.—Dallas 1965, writ ref’d n.r.e.).

18:
Coker
, 650 S.W.2d at 393.

19:
Id.

20:
Id.

21:
Id.

22:
Id.
 at 394.

23:
Hohenberg Bros. Co. v. George E. Gibbons & Co.
, 537 S.W.2d 1, 3 (Tex. 1976).

24:
Id.

25:
Id.

26:
Id.

27:
Id.

28:
See id.
 (stating that forfeiture is not favored).

29:
Coker
, 650 S.W.2d at 394.

30:
See Elliott-Williams
, 9 S.W.3d at 803.

31:
Formosa Plastics Corp. USA v. Presidio Eng’rs & Contractors, Inc.
, 960 S.W.2d 41, 47 (Tex. 1998); 
DeSantis v. Wackenhut Corp.
, 793 S.W.2d 670, 688 (Tex. 1990), 
cert. denied
, 498 U.S. 1048, 111 S. Ct. 755 (1991).

32:
896 S.W.2d 156, 161 (Tex. 1995).

33:
Id. 
at 162.

34:
Id.

35:
See Elliott-Williams
, 9 S.W.3d at 803.

36:
Tex. Civ. Prac. & Rem. Code Ann. 
§ 37.004(a) (Vernon 1997).

37:
John Chezik Buick Co. v. Friendly Chevrolet Co.
, 749 S.W.2d 591, 594 (Tex. App.—Dallas 1988, writ denied);
 Heritage Life Ins. v. Heritage Group Holding Corp.
, 751 S.W.2d 229, 235 (Tex. App.—Dallas 1988, writ denied); 
see also HECI Explorartion Co. v. Clajon Gas Co
., 843 S.W.2d 622, 638 (Tex. App.—Austin 1992, writ denied); 
Falls County v. Perkins & Cullum
, 798 S.W.2d 868, 871 (Tex. App.—Fort Worth 1990, no writ).

38:
HECI Exploration
, 843 S.W.2d at 638; 
see also Hanzel v. Herring
, 80 S.W.3d 167, 174 (Tex. App.—Fort Worth 2002, no pet). 

39:
See John Chezik Buick
, 749 S.W.2d at 594;
 Heritage Life Ins.
, 751 S.W.2d at 235.

40:
HECI Exploration
, 843 S.W.2d at 638; 
see also Hanzel
, 80 S.W.3d at 174.

41:
Tex. Civ. Prac. & Rem. Code Ann.
 §16.069.

42:
Id.

43:
Id. 
§ 16.068.

44:
Tex. Bus. & Com. Code Ann. 
§ 17.565 (Vernon 2002); 
Tex. Civ. Prac. & Rem. Code Ann. §16.003
 (Vernon 2002).