

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00372-CV

———————————————————

MICHAEL RAMON, Appellant

V.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE, Appellee

---

On Appeal from the 89th District Court
Wichita County, Texas
Trial Court No. DC89-CV2024-1132

---

Before Kerr, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Appellant Michael Ramon sued the Texas Department of Criminal Justice (TDCJ) and two of its former employees, Kirk Coonfield and Austin Young, alleging claims under 42 U.S.C.A. § 1983. TDCJ filed a plea to the jurisdiction asserting that TDCJ has sovereign immunity for § 1983 claims and is not a "person" who may be sued under that statute. Five days later, Ramon amended his petition to add claims under the Texas Tort Claims Act (TTCA). *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.002. The next day, the trial court granted TDCJ's plea and dismissed Ramon's claims against it. The order did not address any claims against Coonfield and Young and did not state that it was final and appealable. In a single point on appeal, Ramon argues that the trial court erred because he "did state a cause of action under the [TTCA] (Article 6252-19[1]) and [TDCJ]'s Plea to the Jurisdiction was improperly granted."

The trial court signed its order on July 2, 2024. Ramon did not file his notice of appeal until August 14, 2024. Because this court does not have jurisdiction over this appeal, we will dismiss it.

---

[1]Article 6252–19 was the statutory predecessor to Texas Civil Practice and Remedies Code Chapter 101 and was repealed in 1985. *See Cnty. of Zapata v. Lopez*, 61 S.W.3d 581, 584 n.2 (Tex. App.—San Antonio 2001, no pet.) (noting legislative history).

## Background

Ramon's petition asserted that in July 2022, while he was incarcerated at a TDCJ unit, Coonfield and Young forced him to walk "in only boxers and bare footed in 114 degree heat." "[Ramon] became unable to walk because his feet were completely burned with 2nd and 3rd degree burns, and so [Coonfield and Young] dragged him[,] stomping on his toes and injuring him." He further alleged that he "was threatened by various individuals in TDCJ who tried to enable him to be killed by other inmates by, among other things, providing a key to [Ramon]'s cell to such inmates. [Young] was a participant in this as well."

In his original petition, he pled that he brought his suit "pursuant to 42 U.S.C.A. §[ ]1983" and that "[t]he Defendants violated these Constitutional Rights and acted with actual knowledge of the infliction of bodily harm and mental anguish on [Ramon]," but he did not specify which constitutional rights had been violated. Ramon further alleged that "the Defendants were negligent in various regards," including by failing to properly monitor him, taking off his shoes "on the occasion in question," and "[p]roviding a key to an inmate to harm [him,]" and that the negligence "was a proximate cause of the occurrence in question." He pled that "[a]s a result of the negligence of the Defendants herein," he had suffered "injuries and damages in an amount in excess of $1,000,000." He listed his alleged damages, including medical bills and pain and suffering, and asserted that "[a]ll of the above enumerated damages were proximately caused by the negligence of the Defendant and/or its servants,

3

representatives, agents[,] and/or employees, acting within the course and scope of their employment and/or agency."

TDCJ's plea to the jurisdiction alleged that Ramon "filed suit solely under 42 U.S.C. § 1983, conclusorily alleging violations of unspecified constitutional rights, and stating that 'negligence was a proximate cause of the occurrence in question.'" It argued that the trial court "does not have jurisdiction of his claims against TDCJ" because "'TDCJ is both protected by sovereign immunity and not a 'person' within the meaning of 42 U.S.C. § 1983. Thus, the [trial court] should dismiss [Ramon]'s claims against TDCJ with prejudice." It also alleged that Ramon had failed to exhaust his administrative remedies.

Ramon's amended petition was largely the same as his original petition, but he added that his claims were also brought "pursuant to the [TTCA], Tex. Civ. Prac. & Rem. Code §[ ]101 et seq.," and listed "violating the [TTCA]," as one of the negligent acts committed by the defendants. His amended petition also alleged that he had exhausted his administrative remedies.

The trial court's "Order Granting Plea to the Jurisdiction" was signed on July 2, 2024. This order stated,

> 1. On _____, the Court heard the Texas Department of Criminal Justice's ("TDCJ") Original Answer and Plea to the Jurisdiction of TDCJ (the "Plea to the Jurisdiction"), and duly considered all relevant filings, arguments, and evidence of the parties and their respective counsel.

4

2. The Court finds and determines that TDCJ is protected by sovereign immunity, and that TDCJ is not a "person" within the meaning of 42 U.S.C. § 1983.

3. IT IS ORDERED that TDCJ's Plea to the Jurisdiction is granted.

4. IT IS ORDERED that Plaintiff's claims against TDCJ are dismissed with prejudice.

On July 29, 2024, Ramon filed a motion for new trial, asserting that the order had "apparently [been] signed on July 2, 2024, but the only evidence that we have of the entry of the [o]rder in question is a stamped copy signed by [the trial judge] that was just sent to us on July 26, 2024." He complained that "[t]he submission of the [o]rder in this manner violates Local Rule 1.8 of the Local Rules" for Wichita County courts, which calls for an attorney submitting an order to the trial court to "provide to all opposing counsel . . . a copy of the [o]rder bearing the Clerk's file stamp."

TDCJ filed a response asserting that Ramon's new-trial motion did not show good cause for a new trial, and the trial court denied Ramon's motion the next day. Ramon then filed a "Brief in Response to TDCJ's Response to [Ramon's] Motion for New Trial," arguing that (1) TDCJ's plea to the jurisdiction did not address his TTCA claims and (2) he had not learned of the trial court's order granting the plea to the jurisdiction until July 26, 2024, when TDCJ's attorney informed his attorney via email that the case had been dismissed. On August 14, 2024, he filed his notice of appeal.

5

**Discussion**

## I. Ramon's Notice of Appeal Was Untimely if Interlocutory

The order did not expressly dispose of any claims against Coonfield and Young. As of the date of the trial court's order, Coonfield and Young had not been served. When a trial court signs a judgment disposing of all parties except an unserved party, if "there is nothing to indicate that petitioner ever expected to obtain service upon [the unserved defendant]," then judgment is regarded as final. *See Youngstown Sheet & Tube Co. v. Penn*, 363 S.W.2d 230, 232 (Tex. 1962); *see also M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 674 (Tex. 2004). However, the record in this case indicates that Ramon had been attempting to serve Coonfield and Young before the trial court signed its order. Ramon's petition provided addresses for Coonfield and Young and stated that they could be served at those addresses. A later filing shows that before the trial court signed its order granting the plea to the jurisdiction, Ramon had been attempting to serve them by private process. About a week after the trial court signed its order granting the plea to the jurisdiction, Ramon filed a motion for substituted service asserting that his repeated efforts to serve Coonfield and Young had been unsuccessful. His attached "Return of Due Diligence" regarding each individual defendant set out the attempts of his process server to serve them, and those documents reflect that the process server had been attempting to locate and serve both individual defendants since early June 2024—before the trial court signed its

6

order.[2] Thus, the record indicates that Ramon expected to obtain service upon both individual defendants. Because the trial court's order did not dispose of the claims against them, the order does not appear to be a final judgment.

An order that grants or denies a plea to the jurisdiction by a governmental unit is an appealable interlocutory order, Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8), but an appeal from an interlocutory order is accelerated, and therefore the notice of appeal must be filed within 20 days of the order's signing, Tex. R. App. P. 26.1(b), 28.1(a). We do not have jurisdiction over an appeal absent a timely-filed notice of appeal—or a notice of appeal filed within the 15-day extension period in Rule 26.3. *See* Tex. R. App. P. 26.1(b), 26.3, 28.1(b); *Margetis v. Bayview Loan Servicing, LLC*, 553 S.W.3d 643, 644 (Tex. App.—Waco 2018, no pet.). A motion for new trial will not extend the time to perfect an accelerated appeal. *See* Tex. R. App. P. 28.1(b); *Margetis*, 553 S.W.3d at 644. Because the trial court's order was signed on July 2, 2024, Ramon's notice of appeal was due no later than August 6, 2024. However, it was not filed until August 14, 2024.

Accordingly, after reviewing the record and the parties' briefs, this court became concerned that it might not have jurisdiction over this appeal because the notice of appeal had not been timely filed. Tex. R. App. P. 26.1. We notified Ramon

---

[2]The trial court granted the motion and authorized substituted service. We additionally note that, after the date on which Ramon allegedly learned of the trial court's order granting the plea to the jurisdiction, Ramon managed to serve both Coonfield and Young, and Young filed an answer.

that unless he or any party desiring to continue the appeal filed a response showing grounds for continuing the appeal, it could be dismissed for want of jurisdiction. *See* Tex. R. App. P. 42.3(a), 44.3.

## II. Ramon Has Not Shown Grounds for Exercising Jurisdiction

After we notified Ramon of our jurisdictional concern, he filed a response to our letter asserting two grounds for jurisdiction. He also filed a supplemental brief containing the same legal arguments.[3] We address them in turn.

### A. Rule 306a

First, Ramon argues that he did not learn of the order's signing until July 26, 2024—more than twenty days after the order's signing. He asserts that he had been prepared to offer evidence to that effect but did not have the opportunity to present it because the trial court denied his new-trial motion without a hearing.

Rule of Appellate Procedure 4.2 addresses situations in which a party adversely affected by an appealable order belatedly learns of the order's signing. Tex. R. App. P. 4.2. If the party did not learn of the order or receive notice of it within twenty days of its signing, then "a period that, under the[ appellate] rules, runs from the signing will

---

[3]Ramon's supplemental brief additionally argues that the trial court erred by granting the plea to the jurisdiction because he had alleged a condition of property and the improper use of property to properly invoke the TTCA and that the trial court erred by dismissing his claims with prejudice. Further, in response to TDCJ's brief, he argues that his amended petition was properly before the trial court when the trial court granted the plea to the jurisdiction. Because we do not have jurisdiction over the appeal, we do not address the arguments.

8

begin for that party on the earlier of the date when the party receives notice or acquires actual knowledge of the signing." *Id.*

Rule 4.2 is similar to Texas Rule of Civil Procedure 306a(4), which Ramon invokes in his response to our jurisdiction letter. *See* Tex. R. Civ. P. 306a(4). After citing that rule, Ramon explains when he learned about the order from which he appeals:

> [Ramon] was unaware of the fact that the case had been dismissed until July 26, 2024 when counsel for [Ramon] was informed by defense counsel, via email, that the case had been dismissed. [Ramon]'s office was unable to locate a final order filed on July 2, 2024, through any public records search. Staff for [Ramon]'s counsel contacted the District Clerk's office who was also unable to locate the Order in question, and they presumed it was probably somewhere in the 89th District Court. The Clerk of the 89th indicated that there was a process for Orders to be filed to be served on the parties. Pursuant to [Ramon's] Motion for New Trial, [Ramon] was prepared to offer evidence to support the foregoing, but the Court summarily overruled the Motion without allowing a hearing.[4]

To rely on Rule 4.2, a party must follow the procedure in Rule 306a(5), which requires the party to prove "on sworn motion and notice" the date on which the party received notice of the judgment or acquired actual knowledge and that this date was more than twenty days after the judgment's signing. Tex. R. App. P. 4.2 (providing that the procedure to gain additional time under Rule 4.2. is governed by Rule 306a(5)); Tex. R. Civ. P. 306a(5); *see also Mem'l Hosp. of Galveston Cnty. v. Gillis*,

---

[4]Twelve days after the trial court denied the new-trial motion by written order, Ramon filed a notice of hearing on his motion.

9

741 S.W.2d 364, 365–66 (Tex. 1987) (discussing Rule 306a(5)). "Rule 306a(5) *requires* that the party alleging late notice of judgment file a sworn motion with the trial court establishing the date the party or its counsel first learned of the judgment." *In re Lynd Co.*, 195 S.W.3d 682, 685 (Tex. 2006) (orig. proceeding) (emphasis added). "The sworn motion establishes a prima facie case that the party lacked timely notice . . . ." *Id.*

Ramon's motion for new trial was not sworn. *See In re CommunityBank of Tex., N.A.*, No. 14-22-00246-CV, 2022 WL 3973851, at *3 (Tex. App.—Houston [14th Dist.] Sept. 1, 2022, no pet.) (mem. op.) (holding Rule 306a(5) motion filed in the case did not comply with the rule because it was not sworn). After TDCJ responded to his new-trial motion, Ramon filed a "Brief in Response to TDCJ's Response to Plaintiff's Motion for New Trial," and that document was also unsworn. Ramon did not attach to his motion or brief any affidavits verifying as true and correct the facts set out in his motion. *See Deutsche Bank Nat'l Tr. Co. as Tr. for Registered Holders of Morgan Stanley ABS Capital I Inc. Tr. 2005-WMCI, Mortgage Pass-Through Certificates, Series 2005-WMCI v. Gonzalez*, No. 01-24-00292-CV, 2024 WL 4045489, at *3 (Tex. App.—Houston [1st Dist.] Sept. 5, 2024, no pet.) (per curiam) (mem. op.). Ramon did not file any separate sworn motion.

Ramon additionally argues that "[t]here are numerous cases holding that any mistake in filing post-judgment motions, in order to deny the effectiveness of the motion, must be based upon deliberate or intentional acts on the part of the filer, and

10

a mistake does not constitute deliberate or intentional. . . ." Ramon cites *Heritage Life Insurance v. Heritage Group Holding Corp.*, 751 S.W.2d 229, 231 (Tex. App.—Dallas 1988, writ denied). That case involves the appellant's failure to timely file a cost bond under the former appellate rules. *Id.*; *see Foster v. Williams*, 74 S.W.3d 200, 203 n.2 (Tex. App.—Texarkana 2002, pet. denied) (noting that under former appellate rules, a cost bond rather than a notice of appeal was required to perfect an appeal). The cost bond in that case was filed within the fifteen-day extension period allowed by the appellate rules. *Heritage Life*, 751 S.W.2d at 231. The court of appeals discussed whether the appellant had provided a reasonable explanation for its need for an extension, and the court noted that any plausible explanation that the failure to file the cost bond within the prescribed time was a mistake, rather than a deliberate or intentional act, would suffice. *Id.* Here, however, Ramon did not file his notice of appeal within the fifteen-day extension period.

Because Ramon did not follow the procedure in Rule 306a(5), Rule 4.2 does not apply. *See* Tex. R. App. P. 4.2. Accordingly, Ramon cannot rely on Rule 4.2 to show that this court has jurisdiction over the appeal.

**B. Order Finality**

Ramon further argues that the order granting TDCJ's plea was final. If that were the case, his motion for new trial would have extended the time for perfecting his appeal. *See* Tex. R. App. P. 26.1(a); Tex. R. Civ. P. 329b.

11

The order does not address the claims against Coonfield and Young and contains no language of finality. *See In re Lakeside Resort JV, LLC*, 689 S.W.3d 916, 918 (Tex. 2024) (orig. proceeding) ("[A]n order or judgment that does not follow a conventional trial on the merits is not final on its face unless it is clear and unequivocal about its own finality."). We must therefore look at the underlying record to determine its finality. *See id.* ("Without facial finality, appellate courts typically turn to the underlying record to determine whether the trial court's order or judgment resolved all claims by all parties."); *see also Patel v. Nations Renovations, LLC*, 661 S.W.3d 151, 154 (Tex. 2023) ("[C]ourts will deem a judgment without a trial to be final '(1) [when the judgment] actually disposes of every pending claim and party or (2) [when] it clearly and unequivocally states that it finally disposes of all claims and parties, even if it does not actually do so.'" (quoting *In re Guardianship of Jones*, 629 S.W.3d 921, 924 (Tex. 2021)).

Ramon argues that the order was final because in his petition, he had alleged that Coonfield and Young had committed the acts on which his claims were based while they were TDCJ employees acting within the course and scope of employment, which he argues makes TDCJ liable for their actions. Thus, he argues, the disposition of his claims against TDCJ was also a disposition of his claims against Coonfield and Young. To support his argument, he cites *Talmadge Tinsley Co. v. Kerr*, 541 S.W.2d 207 (Tex. App.—Dallas 1976, writ ref'd n.r.e.) (op. on reh'g). *Talmadge Tinsley*, which turns on principles of agency, does not help Ramon.

12

*Talmadge Tinsley* is a breach-of-contract case. *Id.* at 208. The purchaser in a land sale contract sued for specific performance and named as defendants both Talmadge Tinsley Company, Inc. (Company) and Talmadge Tinsley (Tinsley), alleging that Tinsley had acted as Company's "agent, servant[,] and/or employee." *Id.* The trial court signed two judgments. The first judgment was against "Defendants [Tinsley] and [Company].'" *Id.* The second judgment, signed more than thirty days after the first, named the defendants as "'Defendants [Company] and [Tinsley] Individually and as agent, servant[,] or employee of [Company].'" *Id.*

After the defendants appealed from the second judgment, the court of appeals dismissed the appeal "on the ground that no appeal was perfected from the first judgment and that the second judgment was void because, under Tex. R. Civ. P. 329b(5), the first judgment became final and not subject to modification thirty days after it was signed." *Id.* The appellants moved for rehearing on the basis that the first judgment had been interlocutory because it did not dispose of the purchaser's claim against Tinsley "'as agent, servant[,] or employee.'" *Id.* The appellate court disagreed, holding that the first judgment disposed of all claims. *Id.* The court noted that "[i]f an agent who signs a contract on behalf of his principal is acting within his authority, the principal rather than the agent is liable for a breach," *id.* at 208–09, and thus, "[t]he only legal effect of the allegation in the petition that the individual defendant was acting as 'agent, servant and/or employee' of the corporation is to hold the corporation liable for his acts," *id.* at 208. In that context, the words "as agent,

13

servant[,] or employee of [Company]" added to the second judgment were "meaningless." *Id.*

Here, Ramon asserted claims against Coonfield and Young under § 1983, and under that statute, claims can be brought against a government employee in the employee's official or individual capacity. *See* 42 U.S.C.A § 1983. As the United States Supreme Court has explained, "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which [the person] is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S. Ct. 3099, 3105 (1985) (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690, n. 55, 98 S. Ct. 2018, 2035, n.55 (1978)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* An individual-capacity suit, on the other hand, seeks to impose personal liability on the government employee. *Id.* at 165, 105 S. Ct. at 3105. Ramon's petition does not limit his suit to suing Coonfield and Young in only their official capacities.

The style in Ramon's petition names the defendants as "Texas Department of Criminal Justice, Kirk Coonfield[,] and Austin C. Young," with no specification of the capacity in which Coonfield and Young had been sued. Nowhere in the body of Ramon's petition did he explicitly identify the capacity in which he was suing

14

Coonfield and Young. The paragraph in the amended petition[5] alleging the § 1983 claims provides no clue:

> Plaintiff brings this suit pursuant to 42 U.S.C.A. §[ ]1983, for violation of various constitutional rights of the Plaintiff, and pursuant to the Texas Tort Claims Act, Tex. Civ. Prac. & Rem. Code §[ ]101 et seq., and would demonstrate that the Defendants acted under color of a statute, ordinance, regulation, custom[,] or usage of the State of Texas. The Defendants violated these Constitutional Rights and acted with actual knowledge of the infliction of bodily harm and mental anguish on the Plaintiff.

The under-color-of-law language is simply a reference to § 1983 and is not an indication of the capacity in which Coonfield and Young had been sued. *See* 42 U.S.C.A. § 1983 (authorizing claim against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws").

---

[5]TDCJ argues in its brief that the amended petition was not the live pleading before the trial court because the trial court's order stated that it had considered the plea and "all relevant filings," and the amended petition was not a relevant filing. *But see Patel v. Trevino*, No. 01-20-00445-CV, 2022 WL 3720135, at *1 n.4 (Tex. App.—Houston [1st Dist.] Aug. 30, 2022, no pet.) (mem. op.) (noting that there is no deadline for filing amended pleading before submission of plea to jurisdiction and holding that amended petition filed the day before hearing on plea was the live pleading); *Church v. City of Alvin, Tex.*, No. 01-13-00865-CV, 2015 WL 5769998, at *4 (Tex. App.—Houston [1st Dist.] Sept. 29, 2015, no pet.) (mem. op. on reh'g). We do not need to decide which petition was Ramon's live pleading at the time of the trial court's ruling because neither filing specifies the capacity in which Coonfield and Young had been sued.

15

On the other hand, in the damages section of his petition, he alleges that his damages were caused by "Defendant and/or its servants, representatives, agents and/or employees, acting within the course and scope of their employment[,] and/or agency." That language *could* indicate that Ramon intended to sue Coonfield and Young in their official capacities. *See, e.g.*, *Thompson v. Henderson*, No. 01-98-00549-CV, 1999 WL 417330, at *2 (Tex. App.—Houston [1st Dist.] June 24, 1999, no pet.) (not designated for publication) (interpreting similar language to indicate suit against employee in her official capacity). But even if that is the case, it is not clear that his "course and scope of employment" language reflected an intent to sue them *only* in their official capacities.

For example, that sentence was preceded by statements that the negligence of "the Defendants"—plural—had proximately caused the event in question and that the negligence had resulted in his damages. When pleading his § 1983 claims, he alleged that "[t]he Defendants" had violated his constitutional rights. If Ramon seeks damages against Coonfield and Young, he can only recover against them if he has sued them in their individual capacities. *See Graham*, 473 U.S. at 166, 105 S. Ct. at 3105 ("[W]hile an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself."). As stated, nowhere in his petition does he indicate expressly the capacity in which he had sued Coonfield and Young or limit suit to claims against them in their

official capacities. Accordingly, any claims against Coonfield and Young in their individual capacities remain pending.

In summary, the order does not clearly and unequivocally state that it finally disposes of all claims and parties, and the record does not reflect that the order actually disposes of every pending claim and party.[6] Thus, the order is interlocutory. *See Patel*, 661 S.W.3d at 154. Accordingly, we have no jurisdiction.

## Conclusion

Because Ramon did not timely file his notice of appeal, we dismiss the appeal for want of jurisdiction.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  April 17, 2025

---

[6]As noted above, Ramon served Coonfield and Young after the trial court granted the plea to the jurisdiction and after it denied Ramon's new-trial motion. Thus, Ramon does not appear to be treating the trial court's order as final.