COURT OF APPEALS

                                       SECOND DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                       NO.
 2-08-300-CV

 

 

WOOD CARE CENTERS, INC.                                                APPELLANT

 

                                                   V.

 

EVANGEL TEMPLE ASSEMBLY
OF GOD                                     APPELLEE

OF WICHITA FALLS, TEXAS

 

                                              ------------

 

             FROM
THE 78TH DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.      Introduction








This
breach of contract case concerns a facility that Appellant Wood Care Centers,
Inc. (AWood
Care@) leased
to Appellee Evangel Temple Assembly of God of Wichita Falls, Texas (AEvangel
Temple@) in
fall 2005 for the immediate purpose of housing Hurricane Katrina evacuees.  Evangel Temple terminated the parties= lease
agreement (the AAgreement@) after
the last hurricane evacuees left the facility. 
Wood Care later sued Evangel Temple and argued Evangel Temple was
obligated to find other uses for the facility before terminating the
Agreement.  The trial court entered a
take-nothing judgment against Wood Care after a bench trial.  

In two
issues, Wood Care argues the trial court improperly considered parol evidence
in its interpretation of the Agreement and the evidence is legally and
factually insufficient to support the trial court=s
conclusion that Evangel Temple did not breach the Agreement.  We affirm. 


II.     Factual and procedural background

Mike
Wood testified for Wood Care at trial. 
He said Wood Care originally owned and operated as many as eleven
nursing homes.  Wood Care previously sold
its other nursing home facilities but was unable to sell the facility at issue
because it was closed and no longer licensed to operate as a nursing home.  

After
Hurricane Katrina made landfall on August 29, 2005, Evangel Temple contacted
Wood Care to lease the facility to assist Katrina evacuees. Wood testified that
after the parties reached an initial agreement, Evangel Temple retained an
attorney to finalize the Agreement.  Wood
testified Evangel Temple=s attorney drafted the document,
but Evangel Temple=s business administrator said
Wood provided the initial draft to Evangel Temple. 








The
parties exchanged several drafts of the proposed agreement and signed the final
version of the twenty-year lease on September 6, 2005.  Evangel Temple=s
monthly lease payment was $10,997, although Wood Care made a charitable
contribution to Evangel Temple during the initial term in the form of a reduced
monthly lease payment.  The Agreement
contained a Aten-percent termination clause@ that
stated: 

Tenant, however, shall have the option of terminating this lease at
any time by giving Landlord written notice of its election to do so and payment
to Landlord of a sum of money equal to 10% of the balance of the rental
payments then owed under the terms of this lease.    

 

The Agreement also contained a Atax-exemption
termination clause@ that stated: 

Both parties agree to cooperate
with each other to achieve any available property tax exemption.  In the event a property tax exemption for the
leased premises is denied or suspended, Tenant shall have the option to terminate
this lease.  If, notwithstanding, the
denial of such property tax exemption, Tenant elects to continue the lease,
then Tenant shall be responsible for the payment of all property taxes and
assessments and shall timely pay such taxes or assessments.     








The
original draft of the Agreement did not include the tax-exemption termination
clause.  Wood testified that although he
did not specifically remember, he thought Evangel Temple added the
tax-exemption termination clause because a church is traditionally
tax-exempt.  Wood also testified he
understood Evangel Temple would initially use the facility to house Hurricane
Katrina evacuees. 

After
signing the Agreement, Evangel Temple sought a tax exemption for the facility,
stating in the application that the primary use was Ato house
victims of natural disasters.@  The appraisal district granted the exemption
and informed Evangel Temple in writing that if the use ever changed, the church
must notify the appraisal district.   

For the
first nine months, Evangel Temple paid reduced rental payments to Wood Care
while receiving financial assistance from FEMA, but the last evacuees left the
facility in approximately May 2006.  In
late June 2006, several Evangel Temple representatives met with Wood and gave
Wood Care notice that Evangel Temple would soon move out of the facility.  Evangel Temple sent a termination letter to
Wood Care on June 30, 2006, and Wood Care sent a response the same day making
demand for payment of ten percent of the remaining lease payments under the
ten-percent termination clause.  








Evangel
Temple vacated the facility in approximately July 2006.  According to Wood, Wood Care was unable to
sell or lease the facility after Evangel Temple vacated, and he testified Wood
Care=s
damages totaled $256,279.90 in lost rent, ad valorem taxes, insurance premiums,
and maintenance costs.  Wood testified he
believes Evangel Temple breached the Agreement because it had a duty to
implement other tax-exempt uses at the facility and could have easily done so. 

Kile
Bateman testified that he is the lead pastor of Evangel Temple and that Chad
Sykes was the business administrator, outreach pastor, and director of ACalled
To Compassion.@ 
Bateman testified that Evangel Temple had a few tax-exempt properties
and that, typically, tax exemptions are available if property is used for
non-profit purposes.  Evangel Temple=s
tax-exempt properties included undeveloped property next to the church and a
facility that housed Masters Commission students, drug and alcohol counseling,
a college and career ministry, and flood victims. 








Bateman
testified that the Agreement did not limit Evangel Temple=s use of
the facility and that the parties contemplated future tax-exempt uses for the
facility when negotiating the Agreement.[1]  However, Bateman testified that he understood
Evangel Temple=s right to terminate the Agreement
was dependent on Evangel Temple having a program in place that could operate in
a self-sustaining manner at the facility. 
Bateman believed that if the facility lost its tax exemption, Evangel
Temple had a choice to terminate the Agreement without liability or continue
with the Agreement in the hope that something arose in the future.  

Bateman
agreed it would have been possible to use the facility for the Masters
Commission ministry, Avery limited@ worship
services, or bible study groups.  He also
said Evangel Temple Acould have@
submitted a new application for tax-exempt status citing Areligious
purposes@ as the
primary use of the facility and conducted some type of activity on the property
that would have allowed the property to remain tax-exempt.  Although Bateman agreed that A[a]nything
is possible,@ he testified that Anot
everything is reasonable.@ 


Bateman
testified that if there were another possible use for the facility, Evangel
Temple would have maintained the tax-exempt status, but that there were no
other reasonable uses for the facility. 
He explained that Evangel Temple considered using the property for a
children=s home,
a women=s
shelter, and a Sudanese refugee center. 
After the lawsuit was filed, Evangel Temple considered using the
facility to house at-risk teenagers or as a Life Challenge ministry.  Ultimately, Bateman believed Evangel Temple
did not have any reasonable uses available for the facility.  He testified he believed Evangel Temple did
not breach the Agreement because Evangel Temple did not have any needs that
were not being fulfilled by another facility and because Evangel Temple did all
it could to locate another tax-exempt use.








The
trial court conducted a bench trial over two days in January and April 2008 and
rendered a take-nothing judgment against Wood Care on June 13, 2008.  Wood Care requested and the trial court
signed findings of fact and conclusions of law. 

III.     The Trial Court=s
Interpretation of the Agreement

A.  Applicable law

When construing
contracts and other written instruments, our primary concern is to ascertain
the true intent of the parties as expressed in the instrument.  NP Anderson Cotton Exch., L.P. v. Potter,
230 S.W.3d 457, 463 (Tex. App.CFort Worth 2007,
no pet.).  We must examine and consider
the entire contract in an effort to harmonize and give effect to all provisions
so that none are rendered meaningless.  Id.;
see also J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex.
2003).  AWe construe
contracts >from a utilitarian standpoint bearing in
mind the particular business activity sought to be served= and >will avoid when
possible and proper a construction which is unreasonable, inequitable, and
oppressive.=@  Frost Nat=l Bank v. L &
F Dist., Ltd., 165 S.W.3d 310, 312 (Tex. 2005) (quoting Reilly v.
Rangers Mgmt., Inc., 727 S.W.2d 527, 530 (Tex.1987)).








Lack of clarity or
a disagreement among the parties does not necessarily create an ambiguity.  Universal Health Servs., Inc. v. Renaissance
Women=s Group, P.A., 121 S.W.3d 742,
746 (Tex. 2003).  Rather, whether Aa contract is
ambiguous is a question of law that must be decided by examining the contract
as a whole in light of the circumstances present when the contract was entered.@  Id. AIf, after the
pertinent rules of construction are applied, the contract can be given a
definite or certain legal meaning, it is unambiguous and we construe it as a
matter of law.@  Frost
Nat=l Bank, 165 S.W.3d at 312 (citing Webster,
128 S.W.3d at 229).  

B.     Conflicting Termination Clauses 








Wood
Care contends in part of its first issue that the trial court improperly
considered parol evidence because the conflict between the tax-exemption
termination clause and the ten-percent termination clause could be resolved by
applying rules of contract construction and did not create an ambiguity.[2]  In response, Evangel Temple argues the
conflict between the tax-exemption termination clause and the ten-percent
termination clause created an ambiguity and the trial court properly considered
parol evidence. 

The
Agreement included both a ten-percent termination clause and a tax-exemption
termination clause.[3]  The ten-percent termination clause required
Evangel Temple to pay Wood Care A10% of
the balance of the rental payments then owed under the terms of [the Agreement]@ if
Evangel Temple terminated the Agreement before the twenty-year lease
expired.  The tax-exemption termination
clause, however, allowed Evangel Temple to terminate the Agreement without
liability A[i]n the event a property tax
exemption for the leased premises [was] denied or suspended.@ 








Wood
Care correctly asserts that, if possible, the Agreement must be construed in a
way that neither the ten-percent termination clause nor the tax-exemption
termination clause are rendered meaningless. 
See Potter, 230 S.W.3d at 463 (stating courts must examine
and consider the entire contract Ain an
effort to harmonize and give effect to all provisions so that none are rendered
meaningless@).  Interpreting the Agreement to require Evangel
Temple to pay a ten-percent penalty for terminating the Agreement when the
property was no longer tax-exempt renders the tax-exemption termination clause
meaningless.  Therefore, the
tax-exemption termination clause controls over the ten-percent termination
clause in the event the property loses its tax-exempt status, as it did in this
case, and there is no ambiguity.  See
RSI Int=l, Inc., 291
S.W.3d at 106 (stating contract ambiguous only if still susceptible to more
than one reasonable meaning after applying rules of construction). 








Because
the conflict between the ten-percent termination clause and the tax-exemption
termination clause does not create an ambiguity, the trial court erred by
admitting parol evidence on this issue.  See
Carbona v. CH Med., Inc., 266 S.W.3d 675, 681 (Tex. App.CDallas
2008, no pet.) (recognizing Acourts
do not consider extrinsic evidence in interpreting [an] agreement@ when it
is not ambiguous).  But Wood Care has not
shown the trial court=s consideration of parol
evidence led to an improper judgment or prevented Wood Care from properly
presenting the case to this court.  See
Tex. R. App. P. 44.1(a).  The trial court
admitted only brief testimony concerning the parties= intent
for the tax-exemption termination clause to control over the ten-percent
termination clause.[4]  Also, the trial court=s
ultimate interpretation of the Agreement, that Evangel Temple could terminate
the Agreement without a ten-percent penalty if the facility was no longer
tax-exempt, was correct.  Therefore, the
trial court=s erroneous consideration of
parol evidence does not constitute reversible error.  See Sadoskas v. Sadoskas, No.
13-02-216-CV, 2003 WL 21666115, at *2 (Tex. App.CCorpus
Christi July 17, 2003, no pet.) (mem. op.) (finding no reversible error in
admitting a party=s subjective intent testimony
where Athe
trial court=s final ruling regarding the
contract was correct@); see also Orix Credit
Alliance, Inc. v. Omnibank, N.A., 858 S.W.2d 586, 594 (Tex. App.CHouston
[14th Dist.] 1993, no writ) (holding admission of parol evidence of intent of
parties was irrelevant because the agreement alone showed defendant was
entitled to judgment as a matter of law). 
We therefore overrule this portion of Wood Care=s first
issue.

C.    The
Tax-Exemption Termination Clause

In the
remainder of its first issue, Wood Care contends the trial court incorrectly
interpreted the tax-exemption termination clause.  Specifically, Wood Care argues the trial
court erred by (1) considering parol evidence to interpret the tax-exemption
termination clause and (2) interpreting the tax-exemption termination clause in
a manner that permitted Evangel Temple to cause the facility to lose its tax
exemption and then terminate the Agreement without liability because the
facility was no longer tax-exempt. 








We do
not agree the trial court improperly considered parol evidence to interpret the
tax-exemption termination clause.  As
discussed above, the trial court admitted parol evidence of the parties=
intentions, but the parol evidence all concerned the conflict between the
ten-percent termination clause and the tax-exemption termination clause, not
the meaning of the tax-exemption termination clause itself.  Thus, the trial court did not consider parol
evidence when it interpreted the tax-exemption termination clause.  We overrule this portion of Wood Care=s first
issue.








Wood
Care also argues the trial court incorrectly interpreted the tax-exemption
termination clause to permit Evangel Temple, through its own conduct, to cause
the facility to lose its tax exemption and then use the loss of tax-exempt
status to terminate the Agreement without liability.  To support its contention, Wood Care cites
several cases for the proposition that Texas law generally prevents a party
from invoking a termination clause if that party brings about the circumstances
giving rise to the right to terminate.  See
Sanderson v. Sanderson, 109 S.W.2d 744, 749 (Tex. Comm=n App.
1937, opinion adopted); II Deerfield Ltd. P=ship v.
Henry Bldg., Inc., 41 S.W.3d 259, 265B66 (Tex.
App.CSan
Antonio 2001, pet. denied); Heritage Life Ins. Co. v. Heritage Group Holding
Corp., 751 S.W.2d 229, 234 (Tex. App.CDallas
1988, writ denied); Rich v. McMullan, 506 S.W.2d 745, 747 (Tex. Civ.
App.CSan
Antonio 1974, writ ref=d n.r.e.); Sargent v.
Highlite Broadcasting Co., 466 S.W.2d 866, 867 (Tex. Civ. App.BAustin
1971, no writ).  These cases are
distinguishable, however, because they each involved circumstances where the
breaching party either wilfully refused to perform its own obligations under
the contract or made performance by the other party impossible.  See Sanderson, 109 S.W.2d at
749; II Deerfield Ltd. P=ship, 41
S.W.3d at 265B66; Heritage Life Ins. Co.,
751 S.W.2d at 234; Rich, 506 S.W.2d at 747; Sargent, 466 S.W.2d
at 867. In this case, the trial court heard evidence that Evangel Temple took
steps to find other uses for the property before it terminated the
Agreement.  Further, the sufficiency of
Evangel Temple=s effort to maintain the tax
exemption presents an evidentiary issue rather than an issue of contract
construction.  See, e.g., Sargent,
466 S.W.2d at 867 (holding a fact question is present where the evidence showed
the seller=s president refused to execute
the documents necessary to obtain FCC approval for the sale).  We overrule the remainder of Wood Care=s first
issue.[5]

 

 








IV.    Legal and Factual Sufficiency

In its second issue, Wood Care challenges the
legal and factual sufficiency of the trial court=s findings that Evangel
Temple did not breach the Agreement. 
Wood Care argues the evidence at trial conclusively established that
Evangel Temple breached the Agreement and that the trial court=s finding to the contrary
is against the great weight and preponderance of the evidence.      Wood
Care specifically challenges the sufficiency of the evidence supporting the
following findings of fact:

 

(16)  After considering all the
evidence presented at trial, on [Wood Care=s] claims of Breach of Contract and other related
allegations concerning the Agreement, [Wood Care] failed to prove by a
preponderance of the evidence that [Evangel Temple] breached the
Agreement.  

 

(18)  [Evangel Temple] made reasonable and good faith efforts to find
another use for the premises that would satisfy the legal requirement that the
property was being used for a tax exempt purpose.  

Wood
Care also challenges the following conclusions of law: 

(6)    Under the facts of this
case, termination of the Agreement by [Evangel Temple] without further
liability is allowed for the loss of the tax exempt status of the Property; 

 

(7)    Termination by [Evangel
Temple] under the facts of this case does not trigger the 10% termination
clause in the Agreement;

 

(10)  [Evangel Temple] did not breach the Agreement by terminating said
Agreement due to loss of tax exempt status; 









(11)  All relief requested by [Wood Care] should be
denied.

A.  Standard of Review

Findings
of fact entered in a case tried to the court have the same force and dignity as
a jury=s
answers to jury questions.  Anderson
v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991).  The trial court=s
findings of fact are reviewable for legal and factual sufficiency of the
evidence to support them by the same standards that are applied in reviewing
evidence supporting a jury=s
answer.  Ortiz v. Jones, 917
S.W.2d 770, 772 (Tex. 1996); Catalina v. Blasdel, 881 S.W.2d 295, 297
(Tex. 1994).  Conclusions of law may not
be challenged for factual sufficiency, but they may be reviewed to determine
their correctness based upon the facts.  AMX
Enters., L.L.P. v. Master Realty Corp., 283 S.W.3d 506, 519 (Tex. App.CFort
Worth 2009, no pet.) (op. on reh=g); Dominey
v. Unknown Heirs & Legal Representatives of Lokomski, 172 S.W.3d 67, 71
(Tex. App.CFort Worth 2005, no pet.).








We may
sustain a legal sufficiency challenge only when (1) the record discloses a
complete absence of evidence of a vital fact; (2) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove
a vital fact; (3) the evidence offered to prove a vital fact is no more than a
mere scintilla; or (4) the evidence establishes conclusively the opposite of a
vital fact.  Uniroyal Goodrich Tire
Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526
U.S. 1040 (1999); Robert W. Calvert, "No Evidence" and
"Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361, 362B63
(1960).  In determining whether there is
legally sufficient evidence to support the finding under review, we must
consider evidence favorable to the finding if a reasonable factfinder could and
disregard evidence contrary to the finding unless a reasonable factfinder could
not.  Cent. Ready Mix Concrete Co. v.
Islas, 228 S.W.3d 649, 651 (Tex. 2007); City of Keller v. Wilson,
168 S.W.3d 802, 807, 827 (Tex. 2005).

When
reviewing an assertion that the evidence is factually insufficient to support a
finding, we set aside the finding only if, after considering and weighing all
of the evidence in the record pertinent to that finding, we determine that the
evidence supporting the finding is so weak, or so contrary to the overwhelming
weight of all the evidence, that the answer should be set aside and a new trial
ordered.  Pool v. Ford Motor Co.,
715 S.W.2d 629, 635 (Tex. 1986) (op. on reh=g); Garza
v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965); In re King=s Estate, 150
Tex. 662, 244 S.W.2d 660, 661 (1951).

B.  Analysis








To
prevail on a breach of contract claim, a party must establish the following
elements: (1) the existence of a valid contract; (2) the plaintiff performed or
tendered performance; (3) the defendant breached the contract; and (4) the
plaintiff sustained damages as a result of the defendant=s
breach.  Harris v. Am. Prot. Ins. Co.,
158 S.W.3d 614, 622B23 (Tex. App.CFort
Worth 2005, no pet.). 

 Wood Care correctly asserts that the essential
question in this case is whether Evangel Temple breached the provision of the
Agreement that states:  ABoth
parties agree to cooperate with each other to achieve any available property
tax exemption.@ 
Wood Care argues the evidence conclusively established Evangel Temple=s breach
of this provision because Bateman Aadmitted@ that it
would have been Apossible@ to have
the Master=s Commission education program,[6]
worship services, or a bible study moved to the facility. 








Wood Care
contends Bateman=s Aadmission@ is the
type the trial court could not disregard. 
However, Bateman=s alleged Aadmission@ is
contradicted by his other testimony that the Master=s
Commission and its leadership moved to the Houston area in January 2006 before
the evacuees left the facility in May 2006. 
Bateman=s testimony is also contradicted
by Bateman=s and Sykes=s
testimony that the church did not have a bible study group it could send to the
facility, that any use of the facility for worship services would be Avery
limited,@ and
that Evangel Temple did not have any programs that needed additional
space.  On balance, we do not believe
that Bateman=s Aadmission@ was the
type that prevents reasonable people from differing in their conclusions.  See City of Keller, 168 S.W.3d
at 815B16.[7]  Thus, we do not believe Bateman=s
testimony conclusively established that Evangel Temple breached the Agreement.

Other
evidence supports the trial court=s
findings.  Sykes described the facility=s
limited uses and how its layout prevented Evangel Temple from using the
facility for just any purpose.  When
asked about Wood Care=s suggestion of a bible study
group at the facility, Sykes explained that a bible study would not be suitable
there because the facility=s
primary use was a Aresidential-type ministry.@  Sykes stated that the facility was Anot a
gathering place, . . . or something that you could just throw something in[;]
it had a special purpose.@ 
Sykes testified that the facility was not suitable for Evangel Temple=s other
charitable project, AAngel Food ministry,@ because
it involved receiving and storing large food pallets that were delivered by a
semi-trailer truck.  








Although
Bateman agreed Evangel Temple Acould
have@
submitted another exemption application for the facility after the evacuees
left, he also testified about Evangel Temple=s many
efforts to find another use and its resulting inability to finalize an
agreement with any of the potential organizations for any of the potential
tax-exempt uses.  Evangel Temple=s
efforts to find other tax-exempt uses for the facility included meeting with
CPS about an interim facility for children, speaking with the county=s
veteran=s office
about a veteran=s home, communicating with
Dallas representatives about a Sudanese refugee facility, speaking with a
representative about an annex for women, consulting with a director of the
Dallas Dream Center about a place for at-risk teenagers, and providing a tour
of the building for a prison-aftercare expert. 
Concerning Evangel Temple=s
cooperation with Wood Care to achieve an exemption, Sykes testified that Wood
Care suggested a youth bible study group be placed at the vacant building.  Sykes stated that Wood Care did not suggest
any other uses and did not make any further attempt to cooperate after the
evacuees left the facility.  Bateman
stated that he did not personally have any conversations with Wood Care about a
continued use of the property.   








The
evidence at trial supported the trial court=s
findings of fact that Evangel Temple did not breach the Agreement and that it Amade
reasonable and good faith efforts@ to find
another use for the facility.  The trial
court=s
findings are not negated by the evidence; the evidence at trial established
that Evangel Temple tried to cooperate by pursuing other tax-exempt uses but
could not find a tax-exempt use that fit the facility=s layout
and size.  Furthermore, the trial court
drew the correct legal conclusions from the facts that Evangel Temple could
terminate the Agreement without further liability under the facts of this case,
that Evangel Temple=s termination did not trigger
the ten-percent termination clause, that Evangel Temple did not breach the
Agreement, and that Wood Care=s
requested relief should be denied.  

Based on
the foregoing, after reviewing all of the evidence in the light most favorable
to the trial court=s findings, crediting favorable
evidence if a reasonable factfinder could, and disregarding contrary evidence
unless a reasonable factfinder could not, we hold that there is legally
sufficient evidence to support the trial court=s
findings that Evangel Temple did not breach the Agreement.  Likewise, after considering and weighing all
of the evidence pertinent to the trial court=s
findings, we cannot say that the evidence supporting the trial court=s findings
is so weak or contrary to the overwhelming weight of all the evidence that it
should be set aside and a new trial ordered. We overrule Wood Care=s second
issue.

 

 








V.     Conclusion

Having
overruled both of Wood Care=s
issues, we affirm the trial court=s
judgment.  

 

 

ANNE GARDNER

JUSTICE

 

PANEL:  DAUPHINOT, GARDNER, and
MEIER, JJ.

 

DELIVERED:  February 18, 2010

 

 











[1]Sykes gave similar
testimony but added that Evangel Temple was always aware the evacuees would
eventually go back home. 





[2]Wood Care states in its
brief that it will Aassume@ that the question of
terminating the Agreement for loss of tax-exempt status presents a patent
ambiguity, but then states that the rules of construction resolve the
ambiguity, so the AAgreement is not rendered
>ambiguous= in the sense that the
Court may consider extrinsic evidence@ to determine its meaning.  See RSI Int=l, Inc. v. CTC Transp.,
Inc.,
291 S.W.3d 104, 106 (Tex. App.CFort Worth 2009, no pet.) (AA contract is ambiguous
only if, after the application of established rules of construction, an
agreement is still susceptible to more than one reasonable meaning.@).





[3]The Agreement had other
termination clauses that are not relevant to this appeal. 





[4]Bateman testified he
understood that if Evangel Temple lost its exempt status, the church had a
choice to Aremove [it]self from
[the] property@ or Acontinue to make the
payments and hope something comes along,@ and Sykes testified he understood the
tax-exemption termination clause meant Evangel Temple could terminate the
Agreement without liability if the tax-exemption was not initially granted or
subsequently sustained. 





[5]We will address whether
Evangel Temple=s inability to implement
a subsequent tax-exempt use for the facility constitutes a breach of contract
in our analysis of Wood Care=s second issue.





[6]Bateman confirmed it was Ahypothetically@ possible to run the
Masters Commission program at the building, but he testified it was not
reasonable to do so.





[7]Reviewing courts Acannot disregard
undisputed evidence that allows of only one logical inference@ because Areasonable jurors can
reach only one conclusion from it.@  City
of Keller, 168 S.W.3d at 814 (citations omitted).  However, @[e]vidence is conclusive only if reasonable
people could not differ in their conclusions, a matter that depends on the
facts of each case.@  Id. at 816 (citations omitted).